IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ABADEER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:09-00125 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| TYSON FOODS, INC., and | ) | |
| TYSON FRESH MEATS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Plaintiffs filed this collective action under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b) against the Defendants: Tyson Foods, Inc., and Tyson Fresh Meats, Inc., Plaintiffs' employers. Plaintiffs allege that the Defendants failed to pay them their agreed upon wages for all hours of their work, including payment for work that is required to be performed on the Defendant's work site in violation of the FLSA. In addition to their FLSA claims, Plaintiffs also assert state common law claims for breach of contract and state statutory claims under Tennessee Wage Regulations, Tenn. Code Ann. § 50-2-101(b).

Before the Court is the Defendants' motion to dismiss Plaintiffs' second amended complaint (Docket Entry No. 48) contending, in sum: (1) that Plaintiffs' state law claims are preempted by FLSA; (2) that the Tennessee Wage Regulations, Tenn. Code Ann. § 50-2-101(b) do not provide a private right of action; and (3) that Plaintiffs failed to allege the necessary elements of their breach of contract claim or alternatively Plaintiffs agreed to a novation of their employment contracts, precluding this action.

In response, Plaintiffs contend, in essence, that the FLSA expressly permits

supplementary state laws on wages. Plaintiffs insist that their complaint adequately alleges breaches of their employment contracts. Finally, Plaintiffs argue that by its express provision for civil litigation, Tennessee Wage Regulations create a private right of action for aggrieved workers.

## A. ANALYSIS OF THE COMPLAINT

In sum, Plaintiffs allege that they performed work after they clocked out, and performed work during the uncompensated meal period (Docket Entry No. 37, Second Amended Complaint at ¶ 10). Plaintiffs' specific factual allegations are as follows:

> 9. Plaintiffs are paid pursuant to defendants' "Alternative Time and Attendance System." Under this system, plaintiffs are paid from a designated "Pay Start Time," which is predetermined by defendants based on the position held by the plaintiff. Plaintiffs are paid until they clock out. Tyson's Alternative Time and Attendance System reduced the plaintiffs' on the clock work hours without their knowledge.
>
> 10. Each shift, plaintiffs perform work as part of the continuous workday prior to their Pay Start Time, after they clock out, and during their uncompensated meal period for which they are not paid.
>
> 11. The work activities for which plaintiffs are not paid are integral and indispensable to their principal job duties and are, themselves, principal duties.
>
> \* \* \*
>
> 22 . . . . .Since defendants' facility located in Goodlettsville, Tennessee began operations in or about April 2001, defendants have violated, and continue to violate, 29 U.S.C. § 207(a)(l) by failing and refusing to compensate plaintiffs and other hourly employees working on the production floors and in other departments for their hours of work in excess of 40 hours per work week at a rate of not less than one and one half times the regular rate at which the plaintiffs are employed.
>
> 23. Defendants have deprived the plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that they spend engaged in pre-shift activities which must be performed on plant premises. These activities include but are not limited to: properly donning the

2

frock; retrieving and donning a hairnet, beard net, hard hat and hearing protection from the individual worker's locker; retrieving a combination of the following items from the individual worker's locker or from another location in the plant: safety glasses, green rubber gloves, plastic arm sleeves, Plexiglass forearm guard, mesh glove, belly guard, rubber apron, skinner gloves, scabbard, steel, hook, and hook holder; carrying all equipment retrieved from the locker room on the second floor down two flights of stairs to the production hallway; waiting in the production hallway for supervisors to open the production floor doors; washing hands in sinks in production hallway; sanding steel; walking through sanitizing foot bath into the production floor; sanitizing all non-fabric personal protective equipment (PPE) and other required items (i.e., plastic arm sleeves, green rubber gloves, Plexiglass forearm guard, hearing protection, hard hat, mesh glove, belly guard, rubber apron, skinner gloves, scabbard, steel, hook, and hook holder) by dipping them in a sanitation tank and shaking them dry; donning all sanitized non-fabric PPE and other required items; collecting and donning cotton gloves, cut resistant gloves, cut resistant sleeves, disposable upper arm sleeves and latex gloves; performing tasks such as bringing trays to the work station, wiping down work station, collecting knives from the knife cart, and steeling knives; and walking to work station and waiting for first piece of meat to arrive. These activities are all part of the continuous workday and are compensable.

24. Defendants have deprived the plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that they spend engaged in post-shift activities which all must be performed on plant premises. These activities include but are not limited to: washing equipment; sanitizing all non-fabric PPE and other required items (he., plastic arm sleeves, green rubber gloves, Plexiglass forearm guard, hearing protection,
hard hat, mesh glove, belly guard, rubber apron, skinner gloves, scabbard, steel, hook, and hook holder); walking up two flights of stairs to the locker room; doffing the hard hat, hair net, beard net, and hearing protection; storing a combination of the items (i.e., safety glasses, green rubber gloves, plastic arm sleeves, Plexiglass forearm guard, mesh glove, belly guard, rubber apron, skinner gloves, scabbard, steel, hook and hook holder) in the individual worker's locker; waiting in line to exchange the frock; and doffing and exchanging the frock. These activities are all part of the continuous workday and are compensable.

25. Defendants have also deprived the plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time they spend performing work during their 30 minute uncompensated meal period. Defendants deduct 30 minutes per day from each hourly employee's paycheck regardless of whether the employee has a meal break or is relieved of duty for the full 30 minutes. Hourly employees who work on the production floors and in other departments do not clock out for lunch. The time is automatically

3

deducted despite the fact that hourly employees do not receive a full 30 minute break. Production employees must return to the floor at a set time regardless of the time that they actually leave for their meal break. Hourly production employees rarely, if ever, leave for lunch at the start of the 30 minute meal break. Employees are not allowed to leave the line as long as there is meat on the line. Moreover, employees must doff and don most of their gear, equipment and clothing during their uncompensated meal break.

26. Defendants' violations of the FLSA as alleged herein have been done in a willful and bad faith manner.

27. As a result of the aforesaid willful violations of the FLSA, overtime compensation has been unlawfully withheld by defendants from plaintiffs and similarly situated persons for which the defendants are liable pursuant to 29 U.S.C. § 216(b).

* * *

31. Plaintiffs and Defendants entered into employment agreements whereby plaintiffs agreed to perform services for defendants to be compensated for at an hourly rate.

32. The agreements were made between parties capable of contracting and contained mutual obligations and valid consideration. Plaintiffs have performed all conditions precedent, if any, required of plaintiffs under the agreement.

33. Tyson failed and refused to perform its obligations in accordance with the terms and conditions of the agreement by failing to pay plaintiffs for all time worked on behalf of Tyson and to provide other contractual benefits regarding hours of work. Plaintiffs were thereby damaged in an amount to be determined at trial.

(Docket Entry No. 37, Second Amended Complaint at pp. 3-4, 7-9, 11).

## B. CONCLUSIONS OF LAW

Fed. R. Civ. P. 8(a)(2) provides that a pleading must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007). For a motion to dismiss under Rule 12(b)(6), "the complaint . . . does not need detailed factual allegations." Id. See also Ashcroft v. Iqbal, 129 S.Ct. 1937. 1949 (2009). On a motion to dismiss, the complaint's well-pled factual allegations are treated as true and the Court construes such allegations in the light most favorable to the plaintiff, with all reasonable inferences in the plaintiff's favor. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). "'[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.'" Zaluski v. United American Healthcare Corp., 527 F.3d 564, 570 (6th Cir. 2008) (quoting Twombly, 127 S. Ct. at 1970).

### 1. Preemption

Defendants assert that Plaintiffs' state law claims duplicate Plaintiffs' FLSA claims and as such, are preempted by the FLSA. (Docket Entry No. 49, Defendants' Memorandum at pp. 11-12). Plaintiffs respond that their state law claims are independent of their FLSA claims and are not preempted. The Court considers the preemption issue first because its resolution could render consideration of the challenges to Plaintiffs' state law claims moot.

The FLSA has a savings clause that expressly allows states to maintain wage and hour statutes and regulations in addition to the FLSA.

> No provision of this chapter or of any order thereunder shall excuse
> noncompliance with any Federal or State law or municipal ordinance establishing
> a minimum wage higher than the minimum wage established under this chapter or
> a maximum work week lower than the maximum workweek established under this
> chapter, and no provision of this chapter relating to the employment of child labor
> shall justify noncompliance with any Federal or State law or municipal ordinance
> establishing a higher standard than the standard established under this chapter. No
> provision of this chapter shall justify any employer in reducing a wage paid by
> him which is in excess of the applicable minimum wage under this chapter, or

5

> justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.

29 U.S.C. § 218(a).

Courts interpret this Section 218(a) as reflecting Congress's intention that the FLSA "supplement. . . [state] statutes and [the] parties' . . . written contracts." Thorpe v. Abbott Labs, Inc., 534 F.Supp.2d 1120, 1124 (N.D. Cal. 2008) and that the "FLSA does not preempt state wage and hour laws." Hasken v. City of Louisville, 173 F.Supp.2d 654, 663-64 (W.D. Ky. 2001). Nor does "[t]he FLSA ... preempt stricter state law claims." Thorpe, 534 F.Supp.2d at 1124. To be sure, some district courts have ruled that FLSA's savings clause does not foreclose conflict or ordinary preemption of state wage laws. Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp.2d 439, 451 (W.D. Pa. 2007) (quoting Geier v. Am. Honda Motor Co., 529 U.S. 861, 869 (2000)). The courts that find preemption reason that the state laws are duplicative of the FLSA or the state laws interfere with a well crafted Congressional purpose under the FSLA. See Thorpe, 534 F.Supp. at 1124-25 (citations omitted).

This Court adopts the Thorpe rationale that state laws do not conflict with the FSLA because in Section 218(a), Congress clearly did not preempt state wage laws. Thus, to enforce state wage laws does not interfere with any well crafted Congressional scheme. Moreover, the FLSA sets the minimum wage, whereas Tennessee's wage law and common law breach of contract claim enforce the agreed wages that may be higher than the compensation required by the FLSA. In that event, there is not any conflict. As to any duplication or multiple recoveries on the same wage, the Court can address that issue if it arises by requiring an election of remedies, if the facts establish the same wages on Plaintiffs' FLSA and state law claims. Thus,

6

the Court concludes that the FLSA does not preempt Plaintiffs' state law claims.

As to whether an implied right of action exists on Plaintiffs' state statutory claims, Section 50-2-101 requires an employer to inform employees of their wages. If the employer fails to pay the agreed wages, the Tennessee Wage Regulations expressly provide, in pertinent, part that:

> It is unlawful for any proprietor, foreman, owner or other person to employ, permit or suffer to work for hire, in, about, or in connection with any workshop or factory any person whatsoever without first informing the employee of the amount of wages to be paid for the labor. **The amount agreed upon between employer and employee, or employee representative shall constitute a basis for litigation in civil cases.**

Tenn. Code Ann. § 50-2-101(b) (emphasis added).

Defendants argue that under Section 50-2-101(b), the Court must consider Section 50-2-103 and 50-2-104 that delegate the enforcement of TWR to the state agency. Section 50-2-103(j) refers to Tennessee Department of Labor and Work Force Department ("TDL") enforcement for "this section". Section 50-2-104 refers to the TDL, but that section only addresses the imposition of a civil penalty by TDL for violations of the TWR. Yet, Section 50-2-101 does not contain this limitation or refer to TDL. Section 50-2-101 explicitly authorizes civil litigation and does not expressly limit such action to any entity.

Under Tennessee law, the construction of the statute is a question of law for the Court's resolution. Bryant v. Genco Stamp & Mfg. Co., 33 S.W.3d 761, 765 (Tenn. 2000). Yet, the Court cannot "limit or extend the statute's application," Mooney v. Sweed, 30 S.W. 3d 304, 306-07 (Tenn. 2000), and any judicial construction must be a "reasonable construction." LensCrafters, Inc. v. Sundquist, 33 S.W.2d 772, 777 (Tenn. 2000).

7

The Tennessee state and federal courts have recognized claims under Tennessee Wage Regulations, Owens v. The University Club of Memphis, 1998 WL 719516, at *30-31 (Tenn. Ct. App. Oct. 15, 1998) or have entertained individual worker claims based upon the TWR. Yates v. The Hertz Corp., 285 F. Supp.2d 1104, 1112-13 (M.D. Tenn. 2003) (claim of retaliatory discharge based upon the worker's exercise of his right to a break authorized by Tenn. Code Ann. § 50-2-103(d)). In Owens, the plaintiffs sought the recovery of customer tips from the defendant under § 50-2-107 of the Tennessee Wage Regulations that prohibits employers from failing to provide such gratuities to employees. The Tennessee Court of Appeals upheld the trial court's determination of implied private right of action reasoning that:

> the statute at issue in this case is intended to protect the rights of a certain class of people-service employees who receive tips as part of their compensation" [and] the . . . statute is clearly intended to protect such employees by forbidding employers from keeping their tips. While the statute contains no express indication of legislative intent to create or deny a private right of action, a private action is consistent with the purpose of the legislation, and indeed complements the remedy in the statute by providing a mechanism to make employees whole.

Id. at 11.

Here, § 50-2-101(b) expressly contemplates civil litigation and such a remedy clearly benefits the workers. § 50-2-101(b) does not mention TDL enforcement that is expressly provided in §§ 50-2-103 and 50-2-104. In the Court's view. a reasonable construction of the provisions in § 50-2-101(b) is that the legislature intended a remedy for workers to complement TDL's enforcement authority for other remedies in §§ 50-2-103 and 50-2-104. The Court adopts the Owens rationale to conclude that Plaintiffs, as aggrieved workers, have an implied right of action under § 50-2-101(b) to recover unpaid wages.

## 2. Plaintiffs' Breach of Contract Claim

Defendants next argue that Plaintiffs failed to plead the existence of an enforceable contract and damages resulting from any breach. Plaintiffs allege they are hourly employees, entered into an employment agreement with Defendants to perform service (*i.e.*, work) for compensation at agreed hourly rates, and the Defendants failed to pay them for all hours worked. See infra at pp. 2-4.

Under Tennessee law, "an employment relationship is essentially contractual." Vargo v. Lincoln Brass Works, 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003). See also Hamby v. Genesco, Inc., 627 S.W.2d 373, 375 (Tenn. Ct. App. 1988). Tennessee law enforces oral employment contacts. Dot Bush Goot, et al v. Metropolitan Government of Nashville of Davidson County, 2005 WL 3031638, at *6 (Tenn. Ct. App. Nov. 9, 2005). "Tennessee law [also] consider[s] at will employment relationship to be contractual in nature." Henry v. Trammell Crow SE, Inc., 34 F.Supp.2d 629, 635 (W.D. Tenn. 1998). Thus, "the right and expectation to be paid the agreed-upon wage and the right and expectation of having work hours consistent with applicable federal and state law." Goot, 2005 WL 3031638, at *8. From the Court's review, Plaintiffs have sufficiently alleged an employment relationship exists between Plaintiffs and Defendants. Plaintiffs have sufficiently alleged breaches of their employment contracts. LifeCare Ctrs of Am., Inc. v. Charles Town Assoc's Ltd. Partnership, LPIMC, Inc., 79 F.3d 496, 514 (6th Cir. 1996).

Defendants alternatively argue that Plaintiffs agreed to a novation of the terms of their employment by continuing to work for Tyson and thereby waive their breach of contract claims. A novation is the substitution of a new contract for an existing one. Inghram v. Universal Indus.

9

Gases, Inc., 2006 WL 306650, at *7 (E.D. Tenn. 2006). Under Tennessee law, the four essential elements of a novation are: (1) a previous valid contract; (2) an agreement supported by evidence of the parties' intention to work a novation; (3) the extinguishment of the previously valid contract; and (4) a new, valid contract. Central State Bank v. Edwards, 111 S.W. 2d 873, 880 (Tenn. Ct. App. 1937); Cumberland County Bank v. Eastman, 2005 WL 2043518, at *4 (Tenn. Ct. App. Aug. 25, 2005). The party asserting the novation bears the burden of "clearly showing" proving that a novation occurred. Bank of Crockett v. Cullipher, 752 S.W.2d 84, 89 (Tenn. Ct. App. 1988) (quoting 20 Tenn. Juris., *Novation* at § 3(1985).

The Court concludes that the novation issue cannot be resolved on the bases of the complaint. Plaintiffs allege that Defendants' "Alternative Time and Attendance System reduced the Plaintiffs' on the clock work hours without their knowledge." (Docket Entry No. 37, Second Amended Complaint ¶ 9). Under Tennessee law, "modification of an existing contract cannot be accomplished by the unilateral action by one of the parties and cannot arise from an ambiguous course of dealing." Basford v. Earl Scheib of Tennessee, Inc., 1984 WL 61209 at *7 (Tenn. Ct. App. 1984) (citing Zussman v. Lake-Spiro-Shurman, Inc., 63 Tenn. App. 113, 124 (1970)). Defendants' alleged unilateral modification of their contractual rights precludes such a finding of novation on the pleadings. On this issue, the Defendants cite Whisman v. Ford Motor Co., 157 Fed. Appx. 792, 801 (6th Cir. 2005) that was decided in the context of a summary judgment motion. Thus, the novation issue cannot be resolved on the pleadings.

For the above stated reasons, the Court concludes that the defendants' motion to dismiss should be denied.

An appropriate Order is filed herewith.

10

**ENTERED** this the  9th  day of July, 2009.

                                                  WILLIAM J. HAYNES, JR.
                                                  United States District Judge