# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| HANAA B. ABADEER., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:09-00125 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| TYSON FOODS, INC., and TYSON | ) | |
| FRESH MEATS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M

Plaintiffs[1] filed this action under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq. against the Defendants: Tyson Foods, Inc., and Tyson Fresh Meats, Inc., a subsidiary of Tyson Foods ("Tyson"), their current or former employer. Plaintiffs assert claims for denial of overtime compensation under the FLSA. Plaintiffs' FLSA claims were the subject of earlier litigation by other Tyson employees in this district. Jordan v. IBP, Inc., 542 F.Supp.2d 790 (M.D. Tenn. 2008). Plaintiffs also assert state law claims for the Defendants' breaches of their employment contracts under Tennessee common law and the Defendants' violations of the Tennessee Wage Regulations Act, ("TWRA") Tenn. Code Ann. § 50-2-101 et seq. The Defendants' system allegedly failed to pay Plaintiffs for all hours of work thereby breaching of Tyson's employment contracts with Plaintiffs and the purported class under Tennessee's common law and the TWRA.

Before the Court are Plaintiffs' motion for certification as a collective action under 29

---

[1]Plaintiffs now exceed 500 current and former Tyson employees.

U.S.C. Section 216(b) of the FLSA,[2] (Docket Entry No. 55); Plaintiffs' motion to certify the class of Plaintiffs with state law claims under Fed. R. Civ. P. 23(b), and to appoint class counsel. (Docket Entry No. 88); and Plaintiffs motion for a protective order. (Docket Entry No. 99). Plaintiffs' proposed Rule 23(b) class is defined as "[a]ll current and former hourly employees of Defendants who worked at Tyson's Goodlettsville plant from April 30, 2003, who were paid pursuant to Defendants' Alternative Time and Attendance system." Plaintiffs rely on the proof submitted for their motion under Section 216(b) to support their contentions on their Rule 23(b) motion. Plaintiffs' motion for a protective order seeks to limit the number of Plaintiffs who must respond to and are subject to discovery requests.

The Defendants oppose these motions (Docket Entry No. 65), contending, in sum, that individual determinations preclude certification under Section 216(b) and Rule 23(b) and that since Jordan the Defendants changed certain compensation practices, in that some employees now are compensated for the time periods that were at issue in Jordan. Defendants do not agree to any limit on discovery and insist that all discoverable documents be produced prior to any deposition of the Plaintiffs.

In their reply, (Docket Entry No. 66), Plaintiffs respond that Jordan did not resolve FSLA claims of all Tyson's workers and to the extent that a worker's total time, including uncompensated work, did not exceed 40 hours, the Defendants violated the cited state laws on employee compensation.

---

[2]The Court earlier entered an Order denying Plaintiffs' motion for expedited notice (Docket Entry No. 95) given the Court's earlier tolling of the FLSA statute of limitations until class discovery was complete. The substantive issue of certification under the FLSA briefed by the parties, remains before the Court.

2

For the reasons stated below, the Court concludes that because Plaintiffs' FLSA claims arose from the Defendants' systemic compensation practices, this action should be conditionally certified as a collective action under Section 216(b), as it were in <u>Jordan</u>. The <u>Jordan</u> litigation involved the same factual allegations and the limited discovery authorized in this action provide adequate predicates to decide the class issues. As to Plaintiffs' state law claims, the Court further concludes that under Tennessee law, the Defendants' challenge compensation practices present common factual and legal issues so as to render class certification appropriate under Rule 23(b)(2) and (3). Those claims are based upon the facts in <u>Jordan</u> that the Defendants do not dispute. Plaintiffs stipulate to their absence of a written employment contract. The factual variances cited by the Defendants do not justify denying class certification. Subclasses can be created for any class member(s) with distinct factual issues. As to Defendants' remaining contention, given the complexity of this action, the number of Plaintiffs and putative class members, and the Court's case management orders on tolling and discovery, the Court concludes that good cause exists to justify Plaintiffs' noncompliance with the sixty days requirement in Local Rule 23.01 for filing their motion to certify. Plaintiffs' motion for a protective order shall be granted to limit discovery to 16 named Plaintiffs.

## A. Review of the Record

### 1. Plaintiffs' FLSA Claims

In September 2001, Tyson acquired IBP, Inc.'s beef and pork processing plant in Goodlettsville, Tennessee. With its Goodlettsville plant, Tyson now operates plants with more than 4000 hourly workers. Plaintiffs allege that since April 2003, Tyson workers were not paid for time performing compensable work activities under Tyson's "Alternative Time and

3

Attendance System." Tyson's "Alternative Time and Attendance System" records the time of Plaintiffs' performance of certain preshift duties on the production floor, such as collecting and steeling knives, collecting and donning cotton gloves and plastic gloves, donning sanitized non-fabric personal protective equipment, donning fabric that is distributed on the production floor, walking to and preparing the work station for production work and waiting for the meat to arrive. Tyson's Alternative Time and Attendance System does not pay for any of this recorded work time.

Tyson's employees' pay is determined by the "Pay Start Time" based on the employee's designated position at Tyson. Plaintiffs are then paid for all time until they clock out. Thus, before Plaintiffs commence their designated "Pay Start Time," and after they clocked out, Plaintiffs and members of the purported class performed work described above, without compensation. To the extent that the Defendants' failure to compensate Plaintiffs and members of the purported class for these activities, exceed 40 hours per week, Plaintiffs contend that the FLSA requires overtime compensation for that time.

According to the Defendants, the Goodlettsville facility has two shifts and approximately 12 percent of its employees use a knife. Defendants' production include beef slice, beef packaging, pork slice, pork packaging, and ground beef. Within these areas are various lines or departments with different functions. In addition to production operations, Defendants' employees work on materials handling, quality assurance and maintenance. A production supervisor may be responsible for one or more lines or departments depending on the functions of the department.

According to the Defendants, all hourly production employees clock in and out inside

4

the entrances to the production floor. Defendants assert that hourly production employees are paid from a designated start of paid time until completion of their job duties, but hourly employees are not paid for "gang time" or "line time." Employees are paid for all post-shift activities, including any washing and clothes changing. The Defendants' pre-set start for paid time for some employees is tied to the beginning of a pre-production meeting, and for others to the beginning of pre-production ergonomic exercises. Pre-set times may differ. In some departments, as many as one-fourth of a supervisor's employees may perform some type of compensated pre-production work. Hourly employees in quality assurance and hourly management support employees in some departments are paid from clock in to clock out. Hourly maintenance employees are paid from a pre-set start time to a pre-set end of shift time. Employees using knifes are purportedly paid four minutes each shift for time spent changing into and out of protective clothing and equipment.

Employees at Defendants plant wear different types of clothing and use different equipment. According to Defendants, some employees can clothe and equip themselves in seconds. Since January 2009, frocks, hairnets, and earplugs are distributed outside the production floor. Prior to January 2009, employees washed plastic and mesh items after the end of production work, but before clocking out and without the need to wash after the end of production work. Some employees are not required to wear a frock or a hair or beard net unless they enter a production area. Other employees wear a hardhat, hearing protection, safety glasses (in some cases), and steel toed boots and other employees wear a freezer suits. Certain employees can perform any in-plant clothes changing on paid time. Most employees can wear their own slip-resistant shoes or rubber boots provided by the plant, but drivers and maintenance

5

team must wear steel-toed boots. Some employees must wear safety goggles, hardhats and ear protection. Employees may wear plastic sleeves, a plastic apron, or cotton gloves for their comfort.

### 2. State Law Claims

Plaintiffs' state law claims are based on the same unrecorded work where the employees total work does not exceed 40 hours per week. The named Plaintiffs for the state law claims are: Garang Bol, Linda Ellis, Manuel de Jesus Salvador Hernandez, Ethel Jones, John Kak, Welai Smith, Araceli Villalta and Marcia Williamson. Bol was employed by Tyson at the Goodlettsville plant from October 2005 until April 20,2009 as an hourly production worker on the A shift in the Ground Beef Department as a Box Maker, in the Palletizing Department as a Palletizer and in the Beef Slice Department as a Wizard Operator, skinner and as a trimmer. Ellis a Tyson employee at the Goodlettsville plant since June 22, 2004 has worked as an hourly production worker in the Beef Pack Department on the B shift as a Tray Transferer, Loader, Ross Machine Operator, and Lead. Hernandez has been employed by Tyson at the Goodlettsville plant since the summer of 2005. Hernandez has worked as an hourly production worker in the Load Out Department as a picker and forklift driver. Tyson hired Jones at the Goodlettsville plant in April 2001 where she worked as an hourly production worker on all of the lines in Beef Slice on the A shift. Kak began work at Tyson's Goodlettsville plant in March 2004 as an hourly production worker in the Palletizing Department as a line assembly worker, mule driver and Lead. Smith was employed by Tyson at the Goodlettsville plant from October 2003 until January 2007. Smith worked in the Beef Slice Department as a tray transferer and a styler on the A shift. Since January 2002, Villalta has worked as an hourly production worker at

6

Tyson's Goodlettsville Beef Slice Department as a trimmer, inspector and styler on the A shift. Tyson hired Williamson at the Goodlettsville plant in 2001 as an hourly production worker in the Beef Slice and Pork Slice Departments as a styler, trimmer and inspector. Since April 2003, Plaintiffs have worked on the production floor at Tyson's Goodlettsville plant in the Pork Slice, Beef Slice, Ground Beef, Load Out and Pack sections.

The Defendants have cited other proof but in the Court's view, class certification is not the appropriate context to decide detailed factual issues where full discovery has not occurred. Here, the parties submitted discovery responses, affidavits and excerpts of depositions.[3] Given the scope of the proposed class and given the Supreme Court's admonition,[4] the Court deems a limited factual analysis appropriate. In a word, the Court will not attempt to resolve the Defendants' cited factual disputes. At this point, the Court's duty is to determine only if there is a sufficient factual showing to certify the purported class. The Court first considers Plaintiffs' motion for class certification under Rule 23.

## B. Conclusions of Law

### 1. Rule 23(a) Requirements

Class actions "vindicat[e] the rights of individuals who otherwise ought not consider it worth the candle to embark on litigation in which optimum results might be more than consumed by the cost." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 n. 11 (1981) (quoting Deposit

---

[3]Some of the Defendants' evidentiary materials were taken from absent class members without Court approval and were the subject of Plaintiffs' motion for sanctions. As an appropriate remedy, the Court decided not to consider those class members affidavits. (Docket Entry No. 106, Order)

[4]Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

7

<u>Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326, 338 (1980)). A class action concentrates the litigation in one forum and avoids inconsistent adjudications, thereby advancing "the efficiency and economy of litigation which is a principal purpose of the procedure." <u>Am. Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538, 553 (1974). Any judgment in such an action operates a res judicata against the claims of any other class member. <u>Duncan v. State of Tenn.</u>, 84 F.R.D. 21, 27 (M.D. Tenn. 1979).

To fulfill the requirements for class certification, Plaintiffs must first show compliance with Rule 23(a) of the Federal Rules of Civil Procedure that applies to all class actions. Once Plaintiffs have met this requirement, Plaintiffs must show that class certification is proper under one of the subdivisions of Rule 23(b). <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 621 (1997). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177-78 (1974) (quoting <u>Miller v. Mackey Int'l, Inc.</u>, 452 F.2d 424, 427 (5th Cir.1971)). Plaintiffs' bear the burden "to show the Court that the requirements of Rule 23 are met." <u>Duncan v. State of Tenn.</u>, 84 F.R.D. 21, 27 (M.D. Tenn. 1979). Mere recitation of the statutory language contained in Rule 23 will not satisfy the requirements of these rules. <u>Sims v. Parke Davis Co.</u>, 334 F.Supp. 774 (E.D. Mich. 1971), <u>aff'd</u> 453 F.2d 1259 (6th Cir.1971).

Plaintiffs also bear the burden of persuasion that "[a]s a preliminary matter [the plaintiff can] satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class [they] seek[] to represent falls within one of the subcategories under Rule 23(b)." <u>Steelman v. Strickland</u>, 78 F.R.D. 187, 189 (E.D. Tenn. 1977) (Neese, D.J.) (quoting <u>Senter v.</u>

8

Gen. Motors Corp., 532 F.2d 511, 522 (6th Cir.1976)). This burden is not by a preponderance of the evidence, as that standard applies only to proving the existence of the class at the time of trial. See Paxton v. Union Nat'l Bank, 519 F. Supp. 136, 37, 171 (E.D. Ark. 1981), rev'd in part on other grounds, 688 F.2d 552 (8th Cir.1982). In determining the appropriateness of class certification, a court should accept the complaint's allegations as true. See Reeb v. Ohio Dep't of Rehab. & Corr., 81 Fed. Appx. 550, 555 (6th Cir. 2003).

In reaching a determination on class certification, preliminary hearings on the merits are disfavored. Eisen, 417 U.S. at 177-78; Duncan, 84 F.R.D. at 28. The Supreme Court, however, counsels that in determining class action issues, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 160 (1982) (emphasis added). The Sixth Circuit requires that a district court engage in a "rigorous analysis" of whether the Rule 23 prerequisites are met before certifying a class. In re Am. Med. Sys., Inc., 75 F.3d 1069, 1078 (6th Cir. 1996) (citing General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)). A limited factual inquiry into the class allegations, including the deposition of the named plaintiff, is appropriate for actions involving complex claims. See, e.g., Kirkpatrick v. J.C. Bradford, 827 F.2d 718, 723 (11th Cir.1987) (securities action).

## 2. Rule 23(a) Prerequisites

Rule 23(a) sets forth four prerequisites that must be met for maintenance of a class action suit. To maintain a class action, Plaintiffs must show that: "(1) the class is so numerous

9

that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The district court has broad discretion in deciding to certify a class within the Rule 23 framework. Id. (citing Gulf Oil Co., 452 U.S. at 100)).

### a. Numerosity

To meet the first requirement of class certification under Rule 23(a), Plaintiffs must demonstrate that the putative class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).

> There is no strict numerical test for determining impracticability of joinder. Senter, 532 F.2d at 523 n. 24 (and citations therein). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone. 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992)

In re Am. Med. Sys., Inc., 75 F.3d at 1079.

Here, Plaintiffs contend that the proposed class could involve more than 4000 workers, including former workers. This fact warrants a finding of impracticability of joinder. With a class composed of former and current workers, the Court concludes that joinder of all Plaintiffs's putative class members is impracticable. Thus, the Court concludes that Plaintiffs have satisfied the numerosity requirement of Rule 23(a).

### b. Commonality

To satisfy the second requirement of Rule 23(a), Plaintiffs must demonstrate that "there

10

are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement is interdependent with the impracticability of joinder requirement, and the 'tests together form the underlying conceptual basis supporting class actions.'" In re Am. Med. Sys., Inc., 75 F.3d at 1080 (quoting 1 Newberg, supra at § 3.10, at 3-47).

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they turn on questions of law applicable in the same manner to each member of the class."

Id.

The commonality test requires only a single issue common to all class members. 1 Newberg supra at § 3.10. A class meets the commonality requirement even if questions peculiar to individual class members remain after a determination of defendant's liability. Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir.1988).

> The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class. American Med. Sys., 75 F.3d at 1080. It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998).

At this stage in the proceeding, the Court must determine whether commonality exists without making a determination of the merits of Plaintiffs' claims. Here, Plaintiffs' FLSA and state law claims arise from the same facts concerning Tyson's "Alternative Time and Attendance System" and Tyson's "Pay Start Time" policies that gave rise to the Jordan action that was certified as

11

a class under FLSA.

Plaintiffs and the proposed class share the common facts of having common work duties for which they were not compensated. The common questions of law and fact arise from Tyson's failure to pay the Plaintiffs and putative class members all wages when due. To the extent any variations exists among workers, the Court can create subclasses.

### c. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In the Sixth Circuit, to satisfy typicality, the plaintiff "must be a member of the class he claims to represent . . . [or s]tated another way, the plaintiff must have standing to represent the class." Reid v. White Motor Corp., 886 F.2d 1462, 1471 (6th Cir. 1989).

Typicality limits the class claims to those fairly encompassed by the named plaintiffs' claims. General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980). See also Senter, 532 F.2d at 525 n. 31 ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law"). A necessary consequence of the typicality requirement is that the representative's interests must align with those of the represented group, and in pursuing his own claims, the named plaintiff will advance the interests of the class members. 1 Newberg, supra, § 3.13, at 3-75. In In re Am. Med. Sys., the Sixth Circuit stated:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his

12

or her claims are based on the same legal theory.

75 F.3d at 1082 (quoting 1 Newberg, supra, § 3-13, at 3-76 (footnote omitted)). Further,

> [t]he typicality requirement, so explained, tends to merge with the commonality requirement. Falcon, 457 U.S. at 158 n. 13. Nevertheless, it is a separate inquiry and in particular focuses attention on differences between class representative claims and class claims which would defeat the representative nature of the class action. Fuller v. Fruehauf Trailer Corp., 168 F.R.D. 588, 598 (E.D.Mich.1996).

Saur v. Snappy Apple, 203 F.R.D. 281 288 (W.D. Mich. 2001).

In the Sixth Circuit, the test for typicality is whether a named plaintiff's claims "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." In re Am. Med. Sys., 75 F.3d at 1082 (emphasis added). Here, the named Plaintiffs' and members of their purported class arise from Tyson's "Alternative Time and Attendance System" and "Pay Start Time" policy that define Tyson's common course of conduct toward all of its employees rendering the Plaintiffs' claims typical.

The Court concludes that the claims of the named Plaintiffs are typical of those of the class. Evidence that some employees may be compensated for some activities does not preclude the typicality of the claims of most employees. The Defendants' proof goes to the extent of the class member's loss or injury. After merits discovery, the Court can revisit the certification and scope of the class. Thus, the Court concludes that Plaintiffs have satisfied a threshold showing of typicality under Fed. R. Civ. P. 23(a)(3).

### d. Adequacy

Rule 23(a) demands that the named representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Case 3:09-cv-00125   Document 119   Filed 11/25/09   Page 13 of 23 PageID #: 3646

> This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. Hansberry v. Lee, 311 U.S. 32 (1940); 1 Newberg, § 3.21, at 408. See also Smith v. Babcock, 19 F.3d 257, 264 n. 13 (6th Cir.1994)("[n]o class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard").

Trollinger v. Tyson Foods, Inc., 4:02-CV-23, 2006 WL 2924938 at *7 (E.D. Tenn. Oct. 10, 2006).

Inquiry into the adequacy elements requires the Court to consider whether "1) the representative[s] [have] common interests with unnamed members of the class, and 2) it [] appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel." In re Am. Med. Sys, Inc., 75 F.3d at 21 (quoting Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir.1976)) (Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"). "[A]dequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest." Falcon, 457 U.S. at 157 n. 13.

In Falcon, the Supreme Court reiterated its core requirement that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." 457 U.S. at 156 (citations and quotation omitted). Absolute identity of claims among class members, however, is not required, Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971), particularly as to the amount of damages. Weathers v. Peters Realty Corp., 499 F.2d 1197, 1200-01 (6th Cir. 1974). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives

14

to pursue the claims of the other class members. Id. at 157 n. 13.

The second Senter criterion requires the Court to determine that plaintiffs' counsel will "vigorously prosecute the interests of the class." In fact, the Sixth Circuit "explained that it 'reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another.'" Beattie v. CenturyTel, Inc.,511 F.3d 554, 562-63 (6th Cir. 2007) (quoting Stout v. J.D. Byder, 228 F.3d 709, 717 (6th Cir. 2000)).

For adequacy determinations, the emphasis is on the representation provided by class counsel. Here, Plaintiffs' counsel successfully represented an identical class with FLSA claims in Jordan. The record in this action reflects their vigorous pursuit of these claims. The Court concludes these attorneys will vigorously prosecute the interests of the putative class. In sum, the Court concludes that Plaintiffs have met their burden of demonstrating numerosity, commonality, typicality and adequacy under Rule 23(s). The Court next addresses issues under Fed. R. Civ. P. 23(b)(2) and (3).

### 3. Rule 23(b)

Once plaintiffs have demonstrated that they meet all of the conjunctive requirements of Rule 23(a), they must show that their action falls into one of the subdivisions of Rule 23(b). In the Court's view, two subsections of Rule 23(b) are pertinent here and under these provisions, Plaintiffs must show:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

15

relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2) and (3).

### a. Rule 23(b)(2)

Rule 23(b)(2) "is intended to reach situations where a party has taken or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." Fed. R. Civ. P. 23 Advisory Committee's Note. Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Id.

In actions where Plaintiffs seek monetary relief as well as injunctive and declaratory relief, Plaintiffs must show that the injunctive and declaratory relief sought predominates over any claims for monetary relief. Reeb v. Ohio Dept. of Rehabilitation and Correction, 435 F.3d 639, 647 (6th Cir.2006) (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir.1998). "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to

16

requested injunctive or declaratory relief." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.1998). "In determining whether injunctive relief predominates in a Rule 23(b)(2) class, one critical factor is whether the compensatory relief requested requires individualized damages determination or is susceptible to calculation on a classwide basis. Coleman v. GMAC, 296 F.3d 443, 449 (6th Cir. 2002). Courts have found certification appropriate where damages calculation can be achieved by mechanical computation, because "'without the need for individual calculation'... a separate damages suit by individual class members would be a waste of resources." In re Allstate Ins. Co., 400 F.3d 505, 507 (7th Cir. 2005). As the Sixth Circuit stated in Coleman v. General Motors Acceptance Corp., 296 F.3d 443, 448-49 (6th Cir. 2002), "class treatment of claims is most appropriate where it is not economically feasible for individuals to pursue their own claims."

Certification under 23(b)(2) is pertinent because the monetary damages Plaintiffs seek are unpaid back wages, that can be reasonably estimated and calculated by *formulae* and would not necessarily involve individualized determinations. Certification would be inappropriate if subjective differences among class members predominated over the claims for injunctive relief. The Court does not discern any such circumstances here.

Based upon the earlier analysis of the limited proof, the Court concludes that under Rule 23(b)(2), Plaintiffs are entitled to class certification because the Defendants acted or failed to act in a manner generally applicable to the class, for which final injunctive and/or declaratory relief would be appropriate. Injunctive relief for violations of Tennessee's wage regulation statute and Plaintiffs' employment contracts by employing common practices, can include unpaid wages that are closely akin to backpay awards that can be calculated based upon information in the

17

Defendants' possession.

In <u>Alexander v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers.</u>

<u>AFL-CIO</u>, 565 F.2d 1364, 1372 (6th Cir. 1977), the Sixth Circuit stated that "[a] request for

back pay does not preclude certification under [23(b)(2)]." To be sure,

> While it is true that a claim for back pay implicates some of the same efficiency
> concerns we have cited today as part of our reasoning for excluding
> compensatory damages from a Rule 23(b)(2) class, back pay is qualitatively
> different from compensatory damages...because calculation of back pay generally
> involves less complicated factual determinations and fewer individualized
> issues...
>
> &ast; &ast; &ast;
>
> More importantly, as an equitable remedy, back pay does not involve the more
> significant issues of procedural fairness and constitutionality raised by the
> inclusion of plaintiff's compensatory damages claim in this class."

<u>Coleman</u>, 296 F.3d at 449, 450. The Sixth Circuit has upheld certified class actions under

23(b)(2) including requests for monetary damages. In <u>Senter v. General Motors Corp.</u>, 532 F.2d

511, 525 (6th Cir. 1976), the Sixth Circuit held that "the additional request for back pay does

not preclude certification as a 23 (b)(3) class action."

Plaintiffs' and the class's claims are essentially for back pay, but involve individualized

calculations. The Sixth Circuit permits back pay among the remedies available under 23(b)(2),

despite the individual determinations. As to back pay in a Rule 23(b)(2) class action, <u>Reeb</u>

explained: "...back pay is an equitable remedy that does not implicate the procedural and

constitutional issues that a damage award does." 435 F.3d at 650. The Court concludes that

Plaintiffs' claims are akin to back pay and such claims are certifiable under 23(b)(2).

### b. Dual Certification

18

As to certification under Rule 23(b), to the extent that Plaintiffs seek damages that are not incidental to injunctive and declaratory relief sought, those claims can also be certified under Rule 23(b)(3) in some instances. See Fed. R. Civ. P. 24(c)(4) ("an action may be brought or maintained as a class action with respect to particular issues..."). To be sure, Rule 23(b)(2) and (3) are "written in the disjunctive." The Sixth Circuit however, has upheld class certifications under both 23(b)(2) and (3). See Olden v. LaFarge Corp., 383 F.3d 495 (6th Cir. 2004). In Olden the Sixth Circuit stated:

> Disputes over whether [an] action is primarily for injunctive...relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed. Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental. Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis under one of those subdivisions.

Id. at 510-11 (quoting 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, 2d. § 1775) (emphasis added). Thus, the Court concludes that dual certification under Rule 23(b)(2) and (3) can be appropriate.

### c. Rule 23(b)(3)

To certify a class under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members;

19

and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." Amchem Products, Inc., 521 U.S. at 615 (internal quotation marks omitted).

Upon review of the record, the common questions predominating here are common employment practices that impact all Plaintiffs and members of the purported class in the same on substantially manner, *i.e.*, underpayment of wages. As the Olden Court has held, "individual damage determinations might be necessary, but the plaintiffs have raised common allegations which would likely allow the court to determine liability...for the class as a whole." 383 F.3d at 508. In Olden, the Court found that despite individual injuries, such as wheezing, nausea, headaches, etc., the thrust of plaintiffs' complaint was related to the general increased risk of suffering in the future– whether defendant's action caused some increased health risk. Id. Here, the thrust of Plaintiffs' class claims is the underpayment of workers for the same type of work. To the extent that some workers' damages differ, common issues under Tennessee's wage statute and the parties' employment contracts remain.

## 2. Section Rule 216(b) Certification under FLSA

### a. Review of the Record

Plaintiffs submitted thirteen (13) declarations by party-plaintiffs, deposition testimony of the party-plaintiffs, and deposition testimony of Defendants' Rule 30(b)(6) witnesses in Jordan. Each putative plaintiff performs uncompensated pre-shift duties prior to the employee's "Pay Start Time." These duties include but are not limited to:

20

- Removing a clean sanitary frock from their locker prior to January 2009;[5]

- Donning a clean sanitary frock, donning a hard hat or bump cap, hair net, hearing protection and beard net (if applicable);

- Obtaining and/or donning other types of non-fabric equipment (belly guards, mesh aprons, mesh gloves, upper arm protective sleeves, Plexiglass forearm guards, steel toed shoes and rubber aprons);

- Washing their hands;

- Sterilizing non-fabric equipment;

- Collecting knives and/or additional fabric equipment (e.g., cut resistant gloves, cut resistant sleeves, cotton gloves); and

- Walking to their work stations and setting up for their shift.

After employees clock out, the Defendants require or required the plaintiffs to perform certain uncompensated post-shift duties including, but not limited to:

- Removing their frock, hard hat, hair net, beard net, or hearing protection;

- Sanitizing non-fabric equipment; and

- Walking up two flights of stairs to return the equipment.

Plaintiffs' proof is that the Defendants' use of the Alternative Time and Attendance System - Plaintiffs perform the following work during their 30 minute uncompensated meal period;[6]

--------------------------------------------------

[5]As Plaintiffs noted in their opening brief, in or around January 2009 Defendant - Tyson made some changes to its practices. These changes did not eliminate the FLSA violations, however, See Plaintiff Motion 3, fn. 4. Moreover, the recovery period in this case should extend back to May 4, 2006. 29 U.S.C. § 255(a).

[6]Hourly production workers are also expected to use the restroom during their breaks rather than on paid time.

- Workers at the end of the line must remain in place during their meal period until the last piece of meat passes by their station;

- Doffing their frock and other clothing and equipment (other than their hard hat, hairnet, beard net and ear protection) had hanging it on hoods on the production floor;

- Washing their hands or to returning to the production floor;

- Donning for certification, their frock and other clothing and equipment.

### b. Conclusions of Law

Under the FLSA, the issues for certification under Section 216(b) are two-fold: are the employees similarly situated and all plaintiffs reflect their written consent to participate in the action. Comer v. Wal-Mart Inc.,, 454 F.3d 544, 546 (6th Cir. 2006). The similarly situated determination is made at the first stage of certification and again after 'all of the opt-in-forms have been received and discovery has concluded.'" Id. (citations omitted). Similarly situated does not require that the workers' circumstances be identical. Id. at 547. FLSA's procedure for collective adjudication is intended "to serve the interests of judicial economy through resolution in a single proceeding of claims stemming from common issues of law and fact." Bernard v. Household Int'l, Inc., 231 F. Supp.2d 433, 435 (E.D. Va. 2002).

As to Section 216 certification, based upon a review of the complaint, the parties' affidavits and proof of Tyson's employment and wage practices, as well as the certified collective FLSA action in Jordan, the Court concludes that a sufficient showing has been made of a sufficient number of similarly situated Tyson employees to certify the action under Section 216(b). See Rosiles-Perez v. Superior Forestry Services, Inc., 250 F. R. D. 352 (M.D. Tenn. 2008); Belcher v.

22

Shoney's, Inc., 927 F. Supp. 251 (M. D. Tenn.1996). Thus, the Court directs the Plaintiffs' counsel to prepare an appropriate notice to such employees to inform them of their rights to elect to opt-in as a party plaintiff in this FLSA action.

For the reasons stated above, Plaintiffs' motions for FLSA under Section 216(b) and class certification under Rule 23(b) (Docket Entry Nos. 55 and 88) should be granted.

### c. Plaintiffs' Motion for a Probative Order

As to this motion, the Court concludes that each party may select eight (8) named Plaintiffs for discovery, including depositions. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 684 (1946)( seven employees' testimony on behalf of others similarly situated sufficient for FLSA collective action). The Court also concludes that Plaintiffs must produce responsive documents for the designated Plaintiffs before any deposition of those Plaintiffs.

An appropriate Order is filed herewith.

**ENTERED** the _25th_ day of November, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge

23