UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HANAA B. ABADEER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 3:09-cv-00125 |
| v. ) | |
| ) | Judge Sharp |
| TYSON FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion to Compel Pay and Punch Data and Names and Addresses for Employees Hired on or after December 1, 2010. (Docket No. 267). Defendants oppose the motion, (Docket No. 268), and Plaintiffs reply, (Docket No. 271). For the following reasons, the Court GRANTS the motion.

## BACKGROUND

Plaintiffs are current and former hourly production employees at a beef- and pork-processing plant in Goodlettsville, Tennessee that Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (collectively, Tyson) operate. Plaintiffs filed this case as a class action alleging violations of the Fair Labor Standards Act (FLSA) and state law stemming from Tyson's alleged failure to compensate Plaintiffs for time spent donning and doffing their uniforms and other job-related equipment.

On November 25, 2009, the Court certified a class, under both the FLSA and Rule 23(b)(3) of the Federal Rules of Civil Procedure, consisting of "'[a]ll current and former hourly employees of Defendants who worked at Tyson's Goodlettsville plant from April 30, 2003, who were paid pursuant to Defendants' Alternative Time and Attendance system.'" (Docket No. 120

1

at 1). On December 8, 2009, Tyson produced the names and addresses of class members who worked at the Goodlettsville plant between April 30, 2003, and November 28, 2009.

The Court, however, did not approve the class notice until December 14, 2010. (Docket No. 152). As a result, on December 23, 2010, Tyson provided an updated list of putative class members who worked at the plant between April 30, 2003, and November 30, 2010. In December 2011, Tyson turned over pay-and-punch data that ran through September 2011 for nearly all of the employees in this group.

On October 3, 2013, the Court issued a memorandum opinion on the parties' cross-motions for partial summary judgment. (Docket No. 261). The Court concluded Tyson is liable for failing to pay Plaintiffs for pre- and post-shift work performed from "frock to frock." (*Id*. at 19). The Court further determined Plaintiffs are entitled to liquidated damages and a three-year statute-of-limitations period on their pre- and post-shift work claim due to Tyson's willful violation of federal law. (*Id*. at 31–32). The Court set the remaining issues for trial on April 15, 2014. (Docket No. 263).

In October 2013, Plaintiffs asked Tyson to provide an updated data set that included the names, addresses, and pay-and-punch data for all class members who worked at the plant from April 30, 2003, through the present date. Updated data, Plaintiffs explained, was necessary both to calculate damages before trial and to provide notice to class members hired after November 2010, none of whom received the class notice in December 2010. On October 30, 2013, Tyson furnished an updated data set with pay-and-punch data that ran through September 2013, but included information only for employees hired before December 2010.

The parties' spent the following month tussling over whether Tyson must provide data for employees hired after November 2010 and whether notifying this group of employees about

the lawsuit is legally appropriate. Unable to resolve the dispute, Plaintiffs filed this motion on December 9, 2013. The motion asks the Court to order Tyson to provide the names, addresses, and punch-and-pay data for all current and former hourly Goodlettsville employees paid pursuant to Tyson's Alternative Time and Attendance system and hired on or after December 1, 2010. The Court will call this group "the new employees."

## **LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [or] appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Rule 26 "has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 664 (6th Cir. 2010) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

A party has an ongoing obligation to supplement discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). If a court's intervention is necessary, a party seeking discovery may move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B). Plaintiffs bring the present motion pursuant to these provisions.

## **ANALYSIS**

The Court begins with Tyson's threshold argument that Plaintiffs' motion is "not a discovery motion" at all, "but rather a motion to expand the class" to "employees who are not

part of the Rule 23 or FLSA classes." (Docket No. 268 at 1). As a result, Tyson says, Rule 23 or 29 U.S.C. § 216(b) are "the appropriate vehicles for seeking to change the composition of certified Rule 23 and FLSA classes," making Plaintiffs' motion to compel the wrong procedural device. (*Id.*). The salience of this argument is unclear. Both Tyson and Plaintiffs ask the Court to answer the same question: does the certified class include the new employees? Whether couched as a discovery dispute or a tangle over the right procedural device to raise the issue, the central question remains unchanged. Indeed, Tyson concedes as much when its arguments slip into the language of discovery. (*See, e.g.*, Docket No. 268 at 3 (arguing that if the certified class does not include the new employees, then the "names and addresses and pay and punch-clock data are *irrelevant* to the case" (emphasis added)).

Plaintiffs make several arguments as to why Tyson must produce data concerning the new employees. Starting with the text of the certification order, they observe that the order embraces the new employees because it is open-ended, stating a beginning point (April 30, 2003) but defining no ending point. (*See* Docket No. 120 at 1). Plaintiffs point to two recent cases in which courts rejected Tyson's arguments, tying similarly undefined ending dates in the class definition to the date of the verdict or the judgment. *See Acosta v. Tyson Foods, Inc.*, 2013 WL 3716445, at *2 (D. Neb. July 12, 2013); *Gomez v. Tyson Foods, Inc*., 2013 WL 5516189, at *1 (D. Neb. Oct. 1, 2013). Plaintiffs say that doing the same here is particularly appropriate because Tyson's challenged pay practices in Goodlettsville—some of which the Court has already determined violate federal law—remain unchanged since the Court certified the class in November 2009. Tyson does not dispute this.

Tyson reads the Court's class-certification order differently. On its face, the company says, the order's use of the past tense—referring to employees who "worked" for Tyson and

4

"were paid" pursuant to its timekeeping system—limits the class to employees hired between April 30, 2003, and the class-certification date. Tyson adds that the order does not expressly contemplate inclusion of the new employees in the class.

The class-certification order does answer the core issue one way or the other. Its language is open-ended and can be read to support either side's view. If anything, Plaintiffs have the better of the textual argument because the order contains no end date or, short of that, words that could be construed as a proxy for one, such as the phrase "to the present." The Court next takes up the parties' arguments that reach beyond the order's text.

To begin, Plaintiffs argue that even if the new employees are not clearly within the certified class, the definition of a certified class may change as long as the Court can refer to objective criteria to determine if an individual is a class member at a particular time. *See, e.g.*, *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 952 (N.D. Ohio 2009); 5 Moore's Federal Practice § 23.21[2] (3d ed. 2013). This argument goes to the ascertainability of the class, which is an "implied prerequisite" of Rule 23. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (cited with approval in *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009)); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). In this case, the Court agrees that identifying whether a new employee is a member of the certified class is simple. The Court only needs to review a person's pay-and-punch data to confirm that he is an hourly employee at Tyson's Goodlettsville plant paid pursuant to Tyson's Alternative Time and Attendance System within the relevant time period.

Rather than questioning whether new employees are ascertainable, Tyson instead argues they are not similarly situated to class members. Tyson says that at the time of certification, "the Court was not in a position to evaluate the work situations of individuals who had yet to be hired
5

. . . to determine if they met the requirements of Rule 23." (Docket No. 268 at 4). The problem is that Tyson fails to illuminate how the "work situations" of the new employees are different from the class members'. Tyson does not say, for example, that the new employees differ from the class members because they are not subject to Tyson's idiosyncratic timekeeping system, which the Court has already determined does not pay hourly employees for all compensable work. (Docket No. 261 at 19). Nor does Tyson contend that the oral contracts it made with class members—in which the company represented that employees would be paid for "all hours worked"—were different from its oral agreements with the new employees. (*See id*. at 33–36).

Tyson does claim, however, that new employees are not similarly situated because they came on board after Tyson changed its frock-distribution system at the plant, which decreased the time that some pre- and post- shift activities took. (*Id*. at 5). This assertion is unconvincing because it ignores the calendar. This policy change occurred in January 2009. So when the Court certified the class on November 25, 2009—10 months later—it already included employees who never worked under the old frock-distribution system. (Indeed, as noted, the class includes employees hired through November 2010—22 months after the policy change.) Yet Tyson does not claim that the inclusion of these individuals weakens the glue holding the class together. This inconsistency is the first problem with Tyson's argument. The second is that the policy change bears only on the amount of uncompensated work Goodlettsville employees performed, not whether they performed uncompensated work in the first place. In short, Tyson has not shown that the new employees labor under policies and practices that are any different from those that class members say are unlawful.

Tyson also makes a raft of due-process arguments on behalf of itself and the new employees. First, Tyson says that including the new employees in the class will invade its rights

6

Case 3:09-cv-00125   Document 272   Filed 01/13/14   Page 6 of 9 PageID #: 10523

because the company lacked notice of the scope of the putative class to whom it could be liable and, further, could not conduct discovery with respect to the new employees. The Court disagrees. After the class was certified, Tyson knew the charges Goodlettsville employees levelled against it, as well as the identities of the employees subject to the challenged practices. Tyson's assertion of unfairness or surprise might have legs if the new employees were situated differently from class members. But, again, Tyson has not shown that they are.

Next, Tyson asserts the due-process rights of the new employees. It points out that those employees have not received mandatory notice of the lawsuit as Rule 23(c)(2)(B) requires, and so can't opt out of the class to preserve their ability to sue on their own. This is true, of course, but it's also circular. The pending motion seeks to compel Tyson to provide information about the new employees *so they can get notice of the lawsuit*. This argument also fails.

Finally, the parties spar over whether it serves Rule 23's purposes to make the new employees file a separate case to vindicate their rights. Tyson maintains the new employees can always bring individual suits or seek certification of another class action. It is unfair, Tyson continues, for the new employees to escape their obligation "to go through the process of filing and prosecuting a lawsuit and engaging in discovery and other appropriate motions, such as class certification and summary judgment, to test the claims covering the new class members and new time period." (Docket No. 268 at 11). Plaintiffs counter that requiring the new employees to litigate identical cases alleging that the same practices violate the same laws disserves the efficiency purposes of Rule 23 and the FLSA's collective-action provisions. (Docket No. 267-1 at 18–19). Given that Tyson has not shown how the new employees are distinguishable from the rest of the class, forcing them to litigate a carbon-copy case would only work to multiply the proceedings and waste the Court's and the parties' resources.

7

The Court has "broad discretion to modify [the] class definition[]" and is obligated "to make appropriate adjustments to the class definition as the litigation progresse[s]." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *see also* Fed. R. Civ. P. 23 (C)(1)(c) ("An order that grants or denies class certification may be altered or amended before final judgment."). As it stands now, the Court sees no reason to keep the new employees out of the certified class. The Court clarifies that the class members in this case include all current and former hourly Goodlettsville employees paid pursuant to Tyson's Alternative Time and Attendance system from April 30, 2003, to the date of final judgment.

## CONCLUSION

For the reasons stated, the Court GRANTS Plaintiffs' Motion to Compel Pay and Punch Data and Names and Addresses for Employees Hired on or after December 1, 2010. (Docket No. 267).

Within 7 days after the entry of this order, Tyson will produce the names, addresses, and pay-and-punch data for all current and former hourly employees paid pursuant to Tyson's Alternative Time and Attendance System who were hired to work at the Goodlettsville plant on or after December 1, 2010. Within 14 days after the entry of this order, class counsel shall send notice to these employees by first-class mail, postage prepaid. The notice shall be in substantially the same form the Court previously approved. (Docket No. 152). A 75-day period is appropriate to allow employees receiving this notice to decide whether to opt out of the Rule 23 class and to opt in to the FLSA class.

If the parties seek discovery from members of this group, the Court will entertain such requests upon appropriate motion at any time before the close of proof at trial.

It is SO ORDERED.

_____

KEVIN H. SHARP

UNITED STATES DISTRICT JUDGE