UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HANAA B. ABADEER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | )   No. 3:09-cv-00125 |
| v. | ) |
| | )   Judge Sharp |
| TYSON FOODS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

In accordance with the discussion at the final pretrial conference held on March 31, 2014, the Court issues this order to address two issues. The first is Tyson's renewed argument that the appropriate measure of damages in this case is the "reasonable time" necessary to perform compensable activities, rather than the "actual" time for which Tyson does not compensate Plaintiffs for work done from "frock to frock." (*See, e.g.*, Docket Nos. 345 at 7–8 & 340 at 8–14). The second is Tyson's insistence that the Court must allow Tyson to present evidence as to why all of the "recorded" pre-shift minutes between when Plaintiffs clock-in and their Pay Start Time are not compensable.

*Measure of damages*

The Court (again) rejects Tyson's argument that Plaintiffs can only recover "the minimum time necessarily spent, or the reasonable time spent" on compensable activities. (Docket No. 345 at 7). The Court will clear up Tyson's misunderstanding so the company can conform its proof at trial to the appropriate legal framework.

1

As an initial matter, the Court rejected this same argument at the summary-judgment stage. Responding to Tyson's disquisition, (Docket No. 226 at 9–11), the Court wrote:

> Tyson insists that the correct measure [of the continuous workday] is the reasonable time the challenged activities take, rather than the actual time the employees spend on them . . . .
>
> As a legal matter, Tyson is simply mistaken. The continuous-workday rule requires employees to be compensated for all time spent during the continuous workday, from the first compensable activity to the last, with the exception of bona fide meal periods and off-duty time. Neither the DOL regulation that articulates the rule, nor the Supreme Court's recent affirmation of it in *Alvarez*, qualifies the rule with a reasonableness standard. *See* 29 C.F.R. 790.6(b) (the term "workday" means "the period between the commencement and completion on the same workday of an employee's principal activity or activities" and "includes *all* time within that period whether or not the employee engages in work throughout all of that period") (emphasis added); *Alvarez*, 546 U.S. at 37 ("during a continuous workday, *any* walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity . . . is covered by the FLSA") (emphasis added).
>
> Moreover, the Sixth Circuit has rejected the reasonableness standard in a related context. *See Brock v. City of Cincinnati*, 236 F.3d 793, 803 (6th Cir. 2001) ("Courts should not inquire into the reasonableness of the amount of work employees actually performed or determine what would have been a reasonable amount of work for an employer to seek and an employee to perform."); *see also Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 878 (8th Cir. 2012) (noting that some appellate courts have adopted the reasonable-time standard while others, including the Sixth Circuit, have rejected it). Finally, no appellate case decided after *Alvarez* has adopted "reasonableness" as the measure of compensable time within the continuous workday.
>
> Tyson misplaces its reliance on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972), to support its contention that employees are not entitled to compensation for all the time they spend on activities during the continuous workday. Tyson's selective quotations—such as the Supreme Court's statement that "compensable working time [is] limited to the minimum time necessarily spent in walking at an ordinary rate along the most direct route," *id.*—are irrelevant in light of the Portal Act. In this passage and others Tyson draws on to cobble together its argument, the Court addressed the compensability of time spent walking from the time clock to a work area. The Portal Act, passed less than a year after *Anderson*, invalidated the Supreme Court's interpretation by deeming preliminary—and thus non-compensable—walking time that preceded the employee's first principal activity. *See* 29 U.S.C. 254(a).

(Docket No. 261 at 17–18). The Court further concluded that Tyson was not only wrong as a legal matter, but that its "claim as to the proper measure of compensable time [was] premature as a practical matter" because the "extent of the employees' damages . . . [was] not yet before the Court." (*Id*. at 19). Tyson apparently latches onto this last sentence to renew its claim (but doesn't really explain why the Court's conclusion should be different now than it was before).

As noted in the Court's memorandum, the FLSA compensates employees for actual, not reasonable, time spent on "work" activities. The concept of reasonableness, however, may enter into the fray in the damages inquiry after FLSA liability has been established. If an "FLSA plaintiff . . . prove[s] by a preponderance of evidence that he or she performed work for which he or she was not properly compensated," that "plaintiff can prove his or her under-compensation damages through discovery and analysis of the employer's code-mandated records." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) (internal quotation marks and brackets omitted); *see also U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir. 1995) (noting that the FLSA requires an employer "to make and keep records of employees' wages and hours, plus other employment conditions and practices"). Trouble comes, however, when an employer fails to maintain proper records:

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient

3

> evidence to show the amount and extent of that work *as a matter of just and reasonable inference*. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
>
> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [section] 11 (c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances . . . . [Even where] uncertainty lies . . . in the amount of damages arising from the statutory violation by the employer[,] . . . . it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. *It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.*

*Anderson*, 328 U.S. at 687–88 (emphasis added and internal quotation marks and citations omitted); *accord O'Brien*, 575 F.3d at 602–03.

The Court will not look afresh at all of Tyson's recycled arguments, but will address one new point Tyson raises concerning reasonableness. Tyson reads *Brock*—the same case this Court and others have cited as support for the proposition that the Sixth Circuit has *rejected* the reasonable-time standard—to bolster its view that the reasonable time needed to perform the compensable activities is the appropriate measure of damages, at least with respect to the Rule 23 class members. (Docket No. 340 at 14). Tyson's argument relies on a single sentence in *Brock*, which reads: "Reasonableness, the Second Circuit noted [in *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 526–27 (2d Cir. 1998)] and we today hold, is appropriate only in evaluating agreements concerning work to be performed and the compensation therefor." 236 F.3d at 802. From that (and that alone), Tyson concludes that employees suing on "agreements"—as are, it

4

says, the Rule 23 class members who assert claims under their oral employment contracts—must only be compensated for the reasonable amount of time they spend on work activities.

A quick look at *Brock* shows why the hoary practice of cherry-picking a single sentence from a court opinion doesn't often result in a persuasive argument. In *Brock*, K-9 police officers sued to recover overtime hours they spent training and caring for the unit's dogs at home. *Id*. at 804. *Brock* observed that police-dog-handler cases under the FLSA are not amenable to a precise calculation of the time spent performing compensable work tasks: a court, for example, could not parcel out "what portion of time spent with the dogs—including feeding, playing, watching television, petting, and all the ordinary activities owners engage in with their pets— necessarily and primarily benefitted" the employer. *Id*. at 803. Instead, "the indeterminate nature of [a police-dog handler's] tasks makes them exactly the sort of work as to which it makes sense for the parties to come to an *agreement*, to eliminate complicated, repetitious, and hard to resolve disputes about exactly how much time it took to take care of the dogs each day." *Id*. at 805 (emphasis added). *Brock* involved such an agreement, which fixed in advance the amount of compensation for such difficult-to-measure work tasks.[1] This case, of course, does not. Since no agreement exists between Plaintiffs and Tyson as to how many minutes the activities at issue take, *Brock*'s holding has no application.

---

[1] *Brock* relied on longstanding precedent and Department of Labor regulations to support this preference for resolving difficult time-measurement issues through agreements between employer and employee. In *Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944), *Brock* observed, the Supreme Court noted that "if precisely accurate computation of the amount of time expended in 'work' is difficult or impossible, reasonable provisions of a contract or custom may govern the computation of work hours." 236 F.3d at 802. Similarly, *Brock* recognized that in light of "the difficulty in determining the exact hours worked in circumstances where unsupervised employees can divide their time between 'work' and personal pursuits," DOL regulations allow that "'any reasonable agreement of the parties which takes into account all of the pertinent facts will be accepted.'" *Id*. (quoting 29 C.F.R. § 785.23).

To sum up: Tyson wants to argue at trial that Plaintiffs can only recover "the minimum time necessarily spent, or the reasonable time spent" on compensable activities. (Docket No. 345 at 7). It cannot. The law requires Tyson to compensate employees for *all* time spent during the continuous workday, from the first compensable activity to the last. (Docket No. 261 at 17).

*"Recorded" minutes*

Tyson also warns that due process requires the Court to allow the company to present evidence as to why Plaintiffs are not automatically entitled to recover for all "recorded" pre-shift minutes. As Plaintiffs have explained, they generally divide compensable pre-shift work into two periods. Plaintiffs say the first period—from "frock to clock"—covers the time from when they don their frocks in the changing room to when they go to the time clock and punch in. And the second period—"clock to Pay Start Time"—covers the time from when Plaintiffs punch in to the predetermined time that Tyson's timekeeping system actually begins to pay them, which is presumably keyed to when the production line starts to run. Tyson's timekeeping system records the latter period, so that Tyson has records for the number of minutes every Plaintiff has worked from "clock to Pay Start Time" for every shift during the relevant time periods.

Plaintiffs' claim that because the company's records of the "recorded" minutes are accurate and because Plaintiffs have already donned their frocks by the time they clock-in—and so have started the compensable workday—they don't have to prove the number of minutes in the "recorded" period. Instead, Plaintiffs expect the "recorded" minutes to go to the jury only for a damages calculation and limit their liability-phase task to proving the number of "unrecorded minutes" worked from "frock to clock."

Plaintiffs' argument assumes a crucial fact—that all employees always put on their frocks before they clock-in—that Tyson "do[es] not concede." (Docket No. 345 at 4). As a result, Tyson can explore this factual issue at trial to show that the company does not have to pay Plaintiffs for all of the "recorded" time because employees begin their compensable workday after clocking-in. If the evidence supports Tyson's contention, Plaintiffs may not be able to recover damages for "recorded" minutes that precede the start of their compensable workday.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE