**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HANAA B. ABADEER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 3:09-cv-00125** |
| **v.** | ) | |
| | ) | **Judge Sharp** |
| **TYSON FOODS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM**</u>

Plaintiffs in this donning-and-doffing case claim that Tyson improperly deducts 30 minutes of time for their daily meal period because the company requires them to perform 5–8 minutes of compensable work at the beginning and end of each and every such period. After Tyson automatically takes them off the clock at the beginning of the 30-minute period, Plaintiffs say they have to complete production work and then remove, wash, and stow their frocks and other equipment. When the 30-minute unpaid meal period is up and Tyson automatically puts them back on the clock, Plaintiffs must be suited up and ready at their workstations for the production line to start running again. The single legal question Plaintiffs' claim presents, which is the subject of three pending motions, is whether the FLSA allows them to seek compensation only for the time spent on the activities that "bookend" their 30-minute meal periods. For the reasons that follow, the Court will DENY Tyson's motion to reconsider the Court's January 30, 2014 bifurcation order, (Docket No. 284); DENY Tyson's motion for judgment on the pleadings (which the Court treats as a motion for partial summary judgment), (Docket No. 286); and GRANT Plaintiffs' cross-motion for partial summary judgment as to Tyson's liability for work Plaintiffs perform during the "bookends" of the 30-minute unpaid periods. (Docket No. 300).

## BACKGROUND

Plaintiffs earlier asserted two theories of Tyson's legal liability for this unpaid time.[1] First, Plaintiffs argued that their unpaid 30-minute periods were not "bona fide meal periods"— which are properly noncompensable, *see generally* 29 C.F.R. § 785.19(a)—because Tyson required employees to perform a substantial amount of work during these times, depriving the employees of the predominant benefit of the stretch of unpaid time.  On this theory, Plaintiffs alleged that Tyson was liable to them for the entire 30-minute period for which Tyson did not pay them because it was not a "bona fide meal period."  (Docket No. 206-1 at 29–32).

Plaintiffs' second theory was that, insofar as Tyson must pay Plaintiffs for all of the work they perform during the continuous workday, Tyson's failure to pay them for compensable work performed during the first several minutes and last several minutes of each unpaid 30-minute period violated federal law.  (*Id*. at 32–33).  Under this theory, Plaintiffs sought compensation only for the actual time they spent doing compensable work at the "bookends" of the meal period, not for the entire 30 minutes for which Tyson clocked them out.  The employees have now abandoned the first theory of liability concerning "bona fide meal periods."  (Docket No. 278 at 3–4).  What remains is their alternatively pleaded "bookend" approach.

In its January 30, 2014 bifurcation order, the Court determined that one issue the jury "will likely" take up is "whether the time employees spend on activities that bookend their meal periods—such as production tasks, doffing and donning their uniforms and gear, washing, waiting, and walking to the meal area—is compensable."[2]  (Docket No. 293 at 1).  Recognizing

---

[1] The Court assumes familiarity with the previously described facts of this case.  (Docket No. 261 at 1–7).

[2] The bifurcation order erroneously included the time employees spend "walking to the meal area" in the list of activities the jury might consider in estimating the time employees spend doing compensable work before and after the meal period.  As Tyson explains, the relevant period of walking time is from

the parties' jousting over the "proper test to apply to the employees' meal-period claim," the order stated that the Court was "disinclined at this time to apply the predominant-benefit test to the remaining meal-period claim" but reserved judgment to consider the parties' arguments on the issue at the pretrial conference. (*Id*. at 1–2 n.1). The pretrial conference occurred on March 31, 2014.

After the bifurcation order issued but before the pretrial conference, Tyson moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 286). Tyson concedes its motion is not based on a pleading, (Docket No. 328 at 3), but is instead "based entirely on the application of controlling law to statements in Plaintiffs' opposition to Tyson's motion to bifurcate," (Docket No. 287 at 6). Tyson reasons that its motion is nevertheless appropriate because Plaintiffs did not adequately plead the "bookend" theory; so now that Plaintiffs have abandoned the "bona fide meal period" theory, which Tyson says is the "only meal period theory" their operative pleading embraced, a Rule 12(c) motion is the appropriate method to dismiss the meal-period claim.

The Court concludes that Plaintiffs' pleadings adequately put Tyson on notice of the employees' legal theory. For example, Paragraph 10 of Plaintiffs' second amended complaint, filed on April 30, 2009, alleges that "[e]ach shift, plaintiffs perform work as part of the continuous workday . . . during their uncompensated meal period for which they are not paid." (Docket No. 37 at 4). Later in this same pleading, the employees claim that Tyson has also

> deprived the plaintiffs and other similarly situated employees of overtime compensation by *failing to compensate them for the time they spend performing work during their 30 minute uncompensated meal period* . . . . Hourly production

Plaintiffs' workstations on the production floor to the hooks where they stow their frocks and other equipment, not the time spent walking to the meal area after Plaintiffs have doffed their work equipment. (Docket No. 285 at 9).

employees rarely, if ever, leave for lunch at the start of the 30 minute meal break. Employees are not allowed to leave the line as long as there is meat on the line. Moreover, employees must doff and don most of their gear, equipment and clothing during their uncompensated meal break.

(*Id*. at 9) (emphasis added). Plaintiffs' claim for compensation for the actual time they spend doing compensable work at the beginning and the end of the meal period is clear enough. Tyson's contention that it understood Plaintiffs' complaint to charge only violations of the "bona fide meal period" exclusion ignores the above-quoted text (which, notably, nowhere includes the phrase "bona fide") and comes about five years too late.

Moreover, the record belies the claim that Tyson was not on notice of Plaintiffs' theory. Plaintiffs made the same allegations when they successfully moved for conditional certification on their FLSA claims in July 2009. (*See* Docket No. 56 at 9 ("The activities described above— finishing production work, washing, doffing and donning gear and equipment—constitute work. Nevertheless, Tyson's meal period policies regularly require hourly employees to perform such work without compensation.")). Plaintiffs did so again when they moved for partial summary judgment in February 2012. (*See* Docket No. 206-1 ("Alternatively, and at the very least, plaintiffs are entitled to compensation for the *actual time* they perform compensable work during their 30 minute unpaid meal break.")). The record contains other examples from earlier stages in the litigation. (*See* Docket No. 300 at 5–7 (enumerating several instances)).

Because Tyson's eleventh-hour cry of surprise is unfounded, its argument that a Rule 12(c) motion is appropriate to dispatch Plaintiffs' meal-period claim misses the mark. The Court denies Tyson's motion.

Still, another avenue exists to deal with this claim. "If, on a motion under [Rule 12(c)], matters outside the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Plaintiffs have availed themselves of this precise path, (Docket No. 300), Tyson has responded, (Docket No. 328), and both parties ask the Court to resolve the meal-period matter before trial. Because the Court has not previously resolved this issue, it will now do so, treating Tyson's motion as a motion for partial summary judgment and Plaintiffs' cross-motion as the same.

## LEGAL STANDARD

A party may obtain summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000).  The moving party bears the initial burden of satisfying the Court that the standards of Rule 56 have been met.  *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986).  The ultimate question is whether any genuine issue of material fact is in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  If so, summary judgment is inappropriate.

To defeat a properly supported summary-judgment motion, the nonmoving party must set forth specific facts that show a genuine issue of material fact for trial.  If the party does not do so, summary judgment may be entered.  Fed. R. Civ. P. 56(e).  The nonmoving party's burden to point to evidence demonstrating a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When ruling on cross motions for summary judgment, the Court "must evaluate each motion on its own merits and view all facts

and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

## ANALYSIS

Tyson strenuously argues that Plaintiffs cannot seek compensation for donning and doffing and production activities performed at the beginning and end of the 30-minute unpaid period Tyson sets aside for meals. Casting its contentions in the language of the abattoir, Tyson says Plaintiffs cannot "carve out" these activities and divide the meal period into compensable and noncompensable portions because such "slicing and dicing" is impermissible under Sixth Circuit precedent. By Tyson's lights, an employer who makes an employee perform regular work at the beginning and end of an unpaid window of time that the employer calls a "meal period" may be liable only if the employee does not receive the "predominant benefit" of the entire period taken as a whole. Tyson is mistaken. To explain why, the Court will review the relevant statutory context and Sixth Circuit precedents to see what those sources say (and don't say) about Plaintiffs' remaining theory.

### A. *Statutory and regulatory context*

The Fair Labor Standards Acts (FLSA) requires employers to pay employees a minimum hourly wage for all "hours worked," 29 U.S.C. §§ 206, 207, unless the time at issue is *de minimis*, *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). "Work" is the "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

All "work" activities, however, are not necessarily compensable.  The Portal-to-Portal Act specifically excludes from compensation (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities that an employee is employed to perform, and (2) activities which are preliminary to or postliminary to that principal activity or activities.  29 U.S.C. § 254(a)).  Notwithstanding that, activities "performed either before or after the regular work shift, on or off the production line, are compensable" if they are "an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section [254(a)(1)]."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005) (internal quotation marks omitted).  More, "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'" under section  254(a) of the Portal Act.  *Id*. at 37.

Department of Labor (DOL) regulations define the "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  29 C.F.R. § 790.6(b).  Under the so-called "continuous workday rule," "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted."  *Id*. § 790.6(a).

Against this backdrop of rules, the Court held in its summary-judgment order that donning and doffing frocks are "work" activities that begin and end Plaintiffs' compensable workday, and all other activities performed in the interim are compensable under the continuous-workday rule.  (Docket No. 261 at 19).

### B. Sixth Circuit authority on meal periods

"Bona fide meal periods" that occur during the course of a workday, however, "are not worktime" and so do not have to be compensated. 29 C.F.R. § 785.19. Although DOL regulations require an employee to be "completely relieved from duty for the purposes of eating regular meals" for a meal period to be considered "bona fide," *id.*, the Sixth Circuit long ago rejected the DOL's "completely relieved from duty" test, opting instead for the "predominant benefit" test. *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984). Under that more flexible formulation, an employee is relieved of duty if he "can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit." *Id.*

Two cases illustrate the circumstances in which the Sixth Circuit has applied the "predominant benefit" test. In *Hill*, a mail carrier claimed the Postal Service violated the FLSA "by failing to compensate letter carriers for the one-half hour designated as the lunch period" that the Postal Service automatically deducted from the mail carrier's workday. *Id.* at 811. Hill alleged his meal period was compensable because he remained responsible for the safety of undelivered mail and had to carry with him various postal items, including keys, cash, and receipts. *Id.* And because he wore the familiar postal uniform, Hill claimed he was the "highly visible" public face of the Postal Service and had to provide information to and take mail from the public when asked to do so during his meal break. *Id.* at 811–12. The Sixth Circuit found that Hill's obligation to carry various items did not require him to engage in any substantial activities or interfere with his meal period to a great extent. *Id.* at 814–15. The record suggested Hill carried some of the items very infrequently and was not subjected to "even occasional interruptions" by the public. *Id.* at 815. While the court recognized that other cases may involve

carriers who "conduct more substantial activities during lunch time," and so may be entitled to compensation, it held the Postal Service didn't need to compensate Hill for his meal break. *Id.*

In *Myracle v. General Electric Company*, 33 F.3d 55 (table), 1994 WL 456769 (6th Cir. Aug. 23, 1994), skilled mechanics at a 24-hour light-bulb plant asserted that their "twenty minute meal period is compensable because meal periods are frequently interrupted by their duties on the plant floor, because plaintiffs are responsible for both the quality and quantity of the work produced during their meal periods, and because plaintiffs are subject to discipline for problems with their machines while they are taking their meals." *Id.* at *3. The Sixth Circuit found, however, that because the employees could choose where and when to take their meals, were not required or even allowed to perform work duties during meal periods, and only occasionally suffered interruptions during these times, the employees failed to "show that they performed any duties, much less substantial ones." *Id.* In this context, *Myracle* concluded the mechanics were "substantially relieved of their duties during their meal breaks and that the unpaid meal period does not constitute 'work' within the meaning of the FLSA." *Id.* at *1.

The upshot of these cases is that the Sixth Circuit has clearly held that the predominant-benefit test announced in *Hill* applies when employees seek compensation for the whole of their unpaid meal period because episodic work responsibilities and interruptions allegedly deprive them of a "bona fide meal period." *See Hill*, 751 F.2d at 811 (plaintiff sought compensation "for the one-half hour designated as the lunch period"; *Myracle*, 1994 WL 456769, at *3 (plaintiffs claimed their "twenty minute meal period is compensable"). The Court will call this a "bona fide meal period" claim. But what the Sixth Circuit has not said is whether the predominant-benefit test applies when employees admit they get a "bona fide meal period," but allege instead that their unpaid meal period is essentially never as long as their employer says it is because they

regularly work several minutes into the beginning of it, return to work several minutes before it ends, or both. The Court will call this a "bookend" claim. And, as the Court will explain, such a "bookend" claim is fundamentally different from a "bona fide meal period" claim, and the predominant-beneficiary test bears only on the latter.

### C. "Bona fide meal period" claims vs. "bookend" claims

Recall the factual circumstances of Plaintiffs' claim. Plaintiffs are not required to do any "work" tasks after they doff their frocks and go off to eat a meal, nor are they made to do any "work" before they come back to the production floor from their meals to don their frocks anew. Instead, Plaintiffs quarrel with the fact that their "bona fide meal period" is routinely and predictably a consistent number of minutes shorter than the 30 minutes the company deducts from the hours Plaintiffs work each day. In other words, their "bona fide meal period" actually begins when they doff their frocks after leaving the production floor—which is after Tyson clocks them out—because they are doing compensable production and donning-and-doffing "work" until that occurs. And that same "bona fide meal period" actually ends when they don their frocks after returning to the production floor—which is before Tyson clocks them back in 30 minutes later—because they are doing compensable "work" from that moment on.

There is little doubt that the production-line activities Plaintiffs allege they are required to perform at the "bookends" of the 30-minute period are compensable "work." As well, the Court has already determined that the acts of donning and doffing are also compensable "work," and that, under the continuous-workday rule, the law requires Tyson to compensate Plaintiffs from "frock to frock." (Docket No. 261 at 19). This holding applies as much in the middle of Plaintiffs' shifts as it does at their beginning and end. So just as Tyson is liable for failing to pay employees from the moment they don their frocks at the start of their shifts, it is liable for failing

to pay them from the moment they don their frocks in the final minutes of the unpaid meal period. And equally on the other end: just as Tyson is liable for failing to pay employees until they doff their frocks at the end of their shifts, it is liable for failing to pay them until they doff their frocks at the beginning of the unpaid meal period.

Yet Tyson persists in its view that Plaintiffs' remaining claim is not cognizable and that the Court may apply *only* the predominant-benefit test to determine whether Plaintiffs received a "bona fide meal period." "It would be both inconsistent and illogical," Tyson reasons, "for the predominant benefit test to allow for an unpaid meal period to be interrupted by job duties that do not substantially interfere with the employee's enjoyment of the meal period but require payment for duties occurring at the beginning and end of the meal period that likewise do not substantially interfere with the employee's meal time." (Docket No. 275 at 9).

Despite its superficial appeal, Tyson's rationale is unpersuasive. Conceptually, the predominant-benefit test answers whether or not an entire window of time is a "bona fide meal period." So when a plaintiff claims his employer requires him to perform activities while he is off the clock that deprive him of a "bona fide meal period," a court appropriately asks if, on the whole, the employee gets the predominant benefit of that period. If the facts and circumstances show he is only sporadically interrupted for short periods of time relative to his meal period, the unpaid time is a "bona fide meal period" and the employee cannot recover compensation for any of it. Conversely, if the facts and circumstances show the employee does not get the predominant benefit of the unpaid time because he is interrupted often and at length, the court may conclude the off-the-clock time was not a "bona fide meal period" and that, as a result, the employee is entitled to compensation for all of it. Bottom line: it's an all-or-nothing result.

But what about the compensability of time spent on work before a "bona fide meal period" begins or after it ends? If employees claim they never get the full amount of time their employer deducts for a "bona fide meal period," because they keep working into the unpaid period and resume work before it ends, why should the compensability of those contested minutes be determined by looking at who the predominant beneficiary of the entire period is, rather than through the usual inquiry into whether the challenged activities are compensable as part of the continuous workday?

The problem with Tyson's view of the law is that it requires a court to accept that a "bona fide meal period" starts and ends when an employer says it does, even when its duration is contested, and analyze the compensability of the contested time as part of that "bona fide meal period," even if the facts show otherwise. But the Court cannot see why an employer should get the benefit of the relatively relaxed predominant-benefit test just by claiming a certain window of time is a "bona fide meal period" if employees contest its length. If Plaintiffs can prove that they regularly keeping working after Tyson takes them off the clock, it makes little sense to apply the totality-of-the-circumstances-like predominant-benefit test to determine whether those off-the-clock minutes are compensable (particularly when the employees concede the remainder of the time they have is a "bona fide meal period"). Work that happens minutes four minutes before a "bona fide meal period" begins is just as compensable as work that happens an hour before the period begins. Instead, the inquiry to determine the compensability of activities that "bookend" a "bona fide meal period" is no different than the one used to determine the compensability of all activities that occur in the space of the continuous workday. Tyson cites no authority to explain why challenged minutes should be considered part of the "bona fide meal period" simply on an

employer's say so. Those "bookend" minutes are subject to a factfinder's inquiry to decide the column in which they fall.

Consider the consequences of simply accepting that a "bona fide meal period" is as long as an employer says it is, in the face of allegations that employees are regularly made to work after that period begins and before it ends. Instead of the 30-minute unpaid period at issue here, imagine an employer provides a 90-minute unpaid meal period that runs daily from noon to 1:30 p.m. But rather than let employees leave at noon, the employer runs the production line until 12:30 p.m. Employees can leave then, but they must come back by 1:20 p.m., when the line starts up again. For the 50-minute spell from 12:30 p.m. to 1:20 p.m., the employees do no work. If the employees seek compensation for the 40 unpaid minutes they work every day during the "bookends" of the 90-minute period, they are probably out of luck in Tyson's world; because if the predominant-benefit test applies to the entire 90-minute meal period, the employees likely get the predominant benefit of it (since they do no work for the majority of it) and have plenty of time to eat a meal (50 minutes). The end result is that the entire 90-minute stretch is a "bona fide meal period" that is not compensable under the FLSA. Meanwhile, the employer gets 40 minutes of free labor from each employee every shift. The Court doubts the law lets an employer take minutes of compensable time from an employee by merely declaring that a part of the workday is a "bona fide meal period."

The Court does not share Tyson's fear that permitting a "bookend" claim will render the predominant-benefit test meaningless because employees will seek compensation only for alleged "work" activities that occur during a meal period. (Docket No. 285 at 5). Again, a "bookend" claim is factually and analytically distinct from a claim that time spent on discrete tasks during a meal period that has indisputably commenced—a minute hearing out a

supervisor's instruction here, two minutes fielding a customer's inquiry there—is compensable. Factually, a "bookend" claim will only arise when employees allege their employer does not relieve them of duty when they come off the clock for an unpaid meal period or regularly makes them take those duties up again before the unpaid period ends. What defines it is the consistency with which it happens in relation to when a meal period actually begins or ends (an allegation, for example, that the line does not stop until 4 minutes after employees come off the clock) and its regularity (an allegation, for example, that it happens nearly every shift). Tyson's concern about the difficulties of accounting for small and varying periods of time during which employees perform one-off tasks is not present here because such a claim would not be cognizable under a "bookend" theory.

### D. Dueling authorities

The Court is well aware that this issue has divided courts across the country. Some courts have concluded, consistent with the Court's analysis, that the question of whether a "bona fide meal period" exists is not relevant to determining the compensability of work activities that an employer requires employees to do at the "bookends" of an employer-designated meal period. The principal appellate case that did so, *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 368–70 (4th Cir. 2011), is discussed in detail below. Beyond that, *Acosta v. Tyson Foods, Inc*., 2012 WL 6552772 (D. Neb. Dec. 14, 2012), considered a parallel claim that employees of a Tyson processing facility in Nebraska were entitled to compensation for the time spent donning and doffing before and after meal periods. *Acosta* first rejected the same predominant-benefit argument Tyson makes here, observing that "[w]hen employees seek compensation only for the time periods in which the acts of donning and doffing occur, the court is not confronted with the issue of whether the entire meal period predominately benefits the employer[.]" *Id*. at *9. Then,

after determining that pre- and post-shift donning and doffing of frocks and other gear at Tyson's

plant is compensable work under the same analysis this Court employed, *Acosta* held that

> [t]he same logic applies to the unpaid time that employees are required to spend donning, doffing and sanitizing at the beginning and end of their meal period. Donning and doffing at mealtime is no less a principal activity in the middle of the day than at the beginning of the shift. The articles remain integral and indispensable to the employees' duties. Donning and doffing for meals is also for the company's benefit to avoid bacteria and other contaminants being brought back to the production area on return from the shutdown/meal period. Any benefit that inures to the employees in that they can dine without blood and meat products on their clothing is vastly overshadowed by the benefits to the employer in maintaining a sanitary production facility. The court finds that these donning and doffing activities predominantly benefit the employer. Undisputed evidence shows that donning and doffing the articles after meal and restroom breaks enables the defendant to meet federal regulations requiring employees to wear clean garments and the company to maintain hygienic practices on the production floor. The benefit of such practices to the defendant is great in consideration of the potential for damages that could result from selling a contaminated food product. Accordingly, the court finds as a matter of law that time spent donning and doffing at meal time is work entitled to compensation under the FLSA and cannot be regarded as part of the bona fide meal period carved out of the continuous workday.

*Id.* at *12; *see also Gomez v. Tyson Foods, Inc.*, 2013 WL 7045055, at *18 (D. Neb. Feb. 11,

2013) (same). The force of this analysis is persuasive, and it is also in line with the Department

of Labor's position on the matter.[3]

---

[3] *See, e.g.*, DOL Amicus Brief in Support of Plaintiff-Appellees in *Perez v. Mountaire Farms, Inc.*, No. 09-1917 (Mar. 25, 2010), 2010 WL 1130344, at *18 (4th Cir.) (explaining that because the "bona fide meal period exception from the continuous workday . . . is not applicable until the employee ceases performing work before the start of the meal break" and until "he resumes work after the actual meal period," the bona fide meal period begins after the completion of donning, doffing, and washing activities, "irrespective of any claims by an employer that the meal break period starts before then," and ends once employees "again are required to engage in 'work' activities, such as re-donning and/or washing their sanitary and protective equipment in order to return to the production line"); Opinion Letter Fair Labor Standards Act (FLSA), FLSA2007-1NA, 2007 WL 5130264 (May 14, 2007) (in response to a question asking whether an employer whose employee takes a lunch period of less than 30 minutes must pay that employee for the full 30 minutes or only for that portion of the 30-minute time period the employee was not actually eating lunch, stating that "[the] employer must always . . . compensate employees for work time" and that "[i]f the employee commences work before the full 30-minute lunch period has ended, the employee must be compensated for this work time"); Wage and Hour Opinion

On the other hand, Tyson directs the Court to contrary authorities. Those authorities, however, are unconvincing and, at any rate, are not binding. First among them is *Sepulveda v. Allen Family Foods, Inc.*, in which the Fourth Circuit held (in a footnote and in full) that the time poultry-processing employees "spend during their lunch breaks donning and doffing a few items, washing, and walking to and from the cafeteria . . . is non-compensable . . . because it is part of a bona fide meal period and, in the alternative, *de minimis*." 591 F.3d 209, 216 n.4 (4th Cir. 2009) (citations omitted). *Sepulveda*, of course, glosses over the crux of the issue the concerns the Court—namely, that a meal period begins and ends not simply when an employer says so, and that a factfinder may determine those times if they are contested. (The alternative ground on which *Sepulveda*'s holding rests is not at issue here, as Tyson withdrew the *de minimis* defense it originally asserted. (Docket No. 260 at 1).)

Two other issues undermine *Sepulveda*'s persuasive weight. First, the Fourth Circuit took a sharply critical view of it when the court again addressed the compensability of meal-period donning-and-doffing activities in *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350 (4th Cir. 2011). *Perez* ultimately held that *stare decisis* compelled the conclusion that these activities were noncompensable because "the character of th[e] activities" in *Sepulveda* could not be "distinguished substantively" from those in *Perez*. Before *Perez* got there, though, it roundly condemned *Sepulveda*'s faulty analysis of the distinct "bookend" claim:

> We next address the issue whether the employees' acts of donning and doffing at their meal break are compensable as "work" under the FLSA. As an initial matter, we disagree with Mountaire's argument that our holding in *Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998), requires us to focus our analysis on the unpaid meal break as a whole, rather than on the time the

---

Letter, 2001 WL 58864 (Jan. 15, 2001) ("[T]he meal period may not include any time performing 'work,' and such time spent donning and doffing of personal protective equipment, clothing or gear before or after the meal period is compensable.") (opinion on the 3(*o*) issue, 29 U.S.C. 203(*o*), later withdrawn).

employees spend donning and doffing their protective gear. Our decision in *Roy* does not counsel such a result.

In *Roy*, certain emergency medical service personnel requested compensation for their entire meal break, because they were required to be "on call" to respond to emergencies during the entire break. 141 F.3d at 544. In conducting an analysis of the entire meal break, this Court denied the claim for compensation, concluding that the meal period, as a whole, predominately benefitted the employees. *Id.* at 545.

In the present case, however, the employees do not seek compensation for their entire meal break. Rather, the employees seek compensation only for the time periods in which the acts of donning and doffing occur, activities that they allege occur before and after their "bona fide meal period." Therefore, we are not confronted here with an issue whether the entire meal period predominately benefits the employer, but instead whether the time periods during which these activities occur, and for which compensation is sought, predominately benefit the employer. *See id.*

The district court found that the employees' acts of donning and doffing at the meal break benefit Mountaire by helping to "limit [Mountaire's] products' exposure to bacteria and ensure that products are uncontaminated and clean." *Perez* [*v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 521 (D. Md. 2009)]. Although the district court acknowledged that the employees also benefit from being able to eat "without blood and other chicken product on their persons," the district court found that the benefit to Mountaire outweighs the benefit to the employees. *Id.*

These factual findings are well-supported by the present record and, therefore, should be applied in the resolution of this appeal. If we were writing on a clean slate, we would hold that based on the district court's factual findings, these activities are not part of the "bona fide meal period" but are compensable as "work" under the continuous workday rule. *See Alvarez*, 546 U.S. at 29; *Roy*, 141 F.3d at 545.

We are bound, however, by circuit precedent. In *Sepulveda*, this court held, as a matter of law, that acts of donning and doffing occurring before and after employees eat their meals are non-compensable because these acts are part of the "bona fide meal period." 591 F.3d at 216. Alternatively, this Court concluded that the time spent by employees conducting such activities was non-compensable on the ground that the time was de minimis . . . .

In resolving this issue as a matter of law, the Court in *Sepulveda* appears to have departed from our holding in *Roy*, which instructs that the issue whether employees are entitled to receive compensation as a result of particular activities performed incident to a meal break presents "a question of fact to be resolved by appropriate findings of the trial court." *Roy*, 141 F.3d at 545 (quoting *Skidmore v. Swift*, 323 U.S. 134, 136–37 (1944)). In *Skidmore*, the Supreme Court specifically advised against "lay[ing] down a legal formula to resolve [FLSA] cases so varied in their facts."[9] 323 U.S. at 136. Thus, we conclude that the

decision in *Roy* requires the "predominant benefit" factual analysis that the district court conducted in the present case.[10]

> [9.] Additionally, the language of 29 C.F.R. § 785.19, cited in *Sepulveda* to support its conclusion that meal break donning and doffing is noncompensable, suggests that such a finding would be factual as opposed to legal in nature.

> [10.] The decision in *Sepulveda* appears to have assumed, without regard to the nature and duration of the activities performed, that the donning and doffing activities were part of a "bona fide meal period" simply because they occurred immediately before and after the employees ate their mid-shift meal. The determination of entitlement to compensation under the FLSA, however, is necessarily factual in nature because the outcome depends on the particular activities involved and the amount of time required for their performance. *See Roy*, 141 F.3d at 545. Resolving the issue of compensation for donning and doffing at a meal break as a matter of law effectively eliminates a court's consideration of facts that are usually unique to a given case, thereby impairing the ability of employees to receive compensation for the performance of activities that predominantly benefit the employer.

> Nevertheless, because the activities in *Sepulveda* involved meal break donning and doffing at a poultry processing plant, and the character of those activities cannot be distinguished substantively from the activities at issue here, we are required to follow this Court's holding resolving the issue. Accordingly, we conclude that the employees are not entitled to compensation for the time spent donning and doffing protective gear incident to the meal period. *Sepulveda*, 591 F.3d at 216.

*Id*. at 368–70 (some citations and footnotes omitted). The Court finds *Perez*'s thoughtful analysis far more convincing than *Sepulveda*'s conclusory holding.

The second issue that underscores how little persuasive value *Sepulveda* has here is the concurrence Judge Wilkinson penned in *Perez*. 650 F.3d at 376–81 (Wilkinson, J., concurring). As author of the opinion in *Sepulveda*, Judge Wilkinson responded to the *Perez* majority's critique of *Sepulveda*'s "bookend" claim analysis, explaining that the weight of *Sepulveda*'s conclusion with respect to meal-break doffing and donning rested almost entirely on the *de minimis* doctrine:

> [T]he Fair Labor Standards Act does not require that every controversy over ever-smaller increments of time be litigated out to three decimal places. The de minimis rule in place at the Supreme Court and the circuits imposes some outer limits on this process, and I believe that requiring compensation of lunchtime doffing and donning would exceed those limits here.

*Id*. at 376 (Wilkinson, J., concurring). As the Court has noted, Tyson doesn't seek shelter under the *de minimis* defense. (Docket No. 260 at 1). Moreover, the *Perez* concurrence's elaboration of the other ground *Sepulveda* asserted for holding that "bookend" claims are not compensable was just as question-begging as the original footnote: "Lunchtime doffing and donning also differs from its beginning-and-end-of-day counterpart because the former is incident to a bona fide meal period, which is specifically exempted from compensation by a regulation that itself breaks up the continuous workday." 650 F.3d at 380 (citing 29 C.F.R. § 785.19) (Wilkinson, J., concurring). This conclusion fails to grapple with the central issue with respect to the "bookend" claim here, which is whether contested assertions of when a "bona fide meal period" begins and ends are subject to factual inquiry. The Court finds no basis to insulate that issue from scrutiny.

The next case on which Tyson relies is *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869 (8th Cir. 2012), another donning-and-doffing case brought by meat-processing facility employees. The employees in *Lopez* appealed the district court's instruction on meal-period compensability, arguing the district court should have instructed the jury on the completely-relieved-from-duty standard found in 29 C.F.R. § 785.19(a) rather than the predominant-benefit test. *Id*. at 880–81. *Lopez* affirmed the district court because—just like the Sixth Circuit had done in *Hill*, 751 F.2d at 814—the Eighth Circuit had "rejected the completely-relieved-from-duty standard in favor of the predominantly-for-the-benefit-of-the-employer standard." *Lopez*, 690 F.3d at 881 (citing *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 533–35 (8th Cir. 1993)). As noted, however, the predominant-benefit analysis comes into play when employees argue that their employer

deprives them of a "bona fide meal period."  But Plaintiffs here concede they get a "bona fide meal period," and instead make a distinct "bookend" claim for compensation for the time that they regularly perform work before and after the "bona fide meal period."  This holding in *Lopez*, like its analog in *Hill*, does not bear on Plaintiffs' "bookend" claim.

The plaintiffs in *Lopez*, it is true, attempted "to distinguish *Henson* factually because it addressed employees seeking compensation for entire meal periods while on call, not employees seeking compensation for donning and doffing at the beginning and end of their meal period." *Id*.  But the Eighth Circuit's response—that "the *Henson* court did not limit its holding to cases involving on-call employees," *id*.—shows only that the court (sensibly enough) would not narrow the predominant-benefit test to certain types of employees.  *Lopez* does not expressly require application of the predominant-benefit test if employees seek compensation for time spent working before and after the meal period, rather than for the period as a whole, and district courts in the Eighth Circuit do not interpret *Lopez* to do so.  *See, e.g.*, *Acosta*, 2012 WL 6552772, at *12 ( "time spent donning and doffing at meal time is work entitled to compensation under the FLSA and cannot be regarded as part of the bona fide meal period carved out of the continuous workday"); *Gomez*, 2013 WL 7045055, at *18 (same).  And to the extent *Lopez* does bear on the "bookend" theory, it too offers no explanation as to why the predominant-beneficiary test must apply when a factual dispute exists as to when a "bona fide meal period" begins and ends.

The final authority on which Tyson leans is the Seventh Circuit's recent decision in *Mitchell v. JCG Industries, Inc.*, — F.3d —, 2014 WL 1027714 (7th Cir. Mar. 18, 2014).  In *Mitchell*, unionized employees at a poultry-processing plant sought compensation under the FLSA and the Illinois Minimum Wage Law for the time they spent donning and doffing sanitary clothing and protective gear at the beginning and end of their meal periods.  The central statutory

provision at issue in *Mitchell* was FLSA section 203*( o )*, which enables a company and its employees to enter into a collective-bargaining agreement that excludes donning and doffing from the amount of hours worked.  *See* 29 U.S.C. § 203*( o )*.  That provision specifically excludes from compensable time "'any time spent in changing clothes *at the beginning or end of each workday* which was excluded from measured working time . . . by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.'"  *Mitchell*, 2014 WL 1027714, at *2 (quoting 29 U.S.C. § 203*( o )*).

The employees argued the work time involved in their meal-period claim took place in the middle of the workday and could not be excluded under a provision that excepts from compensation time spent donning and doffing "at the beginning or end of each workday."  The employees premised their argument on the DOL's continuous-workday rule and the DOL's longstanding definition of "workday," both of which the Supreme Court approved in *Alvarez*. 546 U.S. at 28–29 ("consistent with [the Court's] prior decisions interpreting the FLSA, the Department of Labor has adopted the continuous workday rule, which means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities'" (quoting 29 C.F.R. § 790.6(b)).

In a split opinion, the panel majority rejected the employees' argument, holding that under section 203*( o )* "identical considerations attend payment for time changing at the beginning and end of a meal break as at the beginning and end" of a "workday."  *Mitchell*, 2014 WL 1027714, at *3.  To reach this result, *Mitchell* reasoned that employees "given a half-hour lunch or other meal break from work are in effect working two four-hour workdays in an eight-

and-a-half-hour period." *Id*. at *2.[4]  Departing radically from the conventional understanding of

"workday"—in effect since 1947 and approved by the Supreme Court in 2005—*Mitchell* found

that the period before a meal break was the end of one "workday" and the period after a meal

break was the start of another.  With that sleight of hand, *Mitchell* concluded the time spent

donning and doffing before and after such breaks could be excluded under section 203*( o )* since

it occurred "at the beginning or end of each workday."  (*Mitchell* also offered up *Sepulveda*'s

two bases as alternative grounds for excluding meal-period donning-and-doffing time, *id.* at *4,

which the Court has already addressed.)

    *Mitchell* does not apply to this case for a simple reason:  Plaintiffs are not unionized and

do not operate under a collective-bargaining agreement.  As such, *Mitchell*'s meal-period

compensability holding is a poor fit.  The rationale that drove *Mitchell*, repeated over and over, is

that courts must interpret the FLSA to respect the deals employers and unions strike.[5]  Of course,

---

[4] The majority found "room for [this] exception" from the DOL's definition of "workday" in the "qualifying phrase 'in general'" found in 29 C.F.R. § 790.6(b) and paraphrased as "generally" in *Alvarez*, 546 U.S. at 29.  *Mitchell*, 2014 WL 1027714, at *3.  This newly discovered "exception," then, presumably applies to all unionized shift work that includes a meal break, which is to say nearly all unionized shift work.

[5] *See, e.g.*, *Mitchell*, 2014 WL 1027714, at *3 ("Since changing time isn't working time, a union may decide not to press the employer to pay the workers for that time.  That forbearance is likely to be mutually attractive because it avoids the bother of having to keep track of how long the changing takes (and it will differ for each worker) in order to determine what each worker is owed for that time.  Hence the optional exemption in section 203*( o )*."); *id.* ("Still another reason to interpret 'workday' in this manner is that the Fair Labor Standards Act does not require employers to provide meal breaks at all.  Whether to provide them is left up to collective bargaining if as in this case the workplace is unionized."); *id.* ("To interpret section 203*( o )* narrowly disserves the interest of workers by narrowing the scope of collective bargaining and, as in this case, setting a group of workers against their union.  There are good practical reasons why the union in this case did not negotiate for making the time [for changing during the lunch break] compensable."); *id.* at *7 ("avoiding relatively inconsequential judicial involvement in a morass of difficult, factspecific determinations" exactly describes "a court's determining the changing time spent by the different poultry workers on different days, rather than leaving it to the union to decide to negotiate in lieu of the monitoring and incessant disagreement that such a measurement process would require to implement an alternative form of compensation" (quotation marks omitted)); *id.* at *9 ("[T]he cause of amicable labor-management relations is impaired by reading broadly statutes and regulations that remove wage and hour issues from the scope of collective bargaining.  That is what motivated Congress to amend the [FLSA to add § 203*( o )*] . . . .  Employer and union in this case have agreed not to count the

this offers little consolation to Plaintiffs, who do not have a union to rationalize their group interests and bargain away compensation for meal-period donning and doffing in favor of other priorities more important to the employees. Consequently, *Mitchell*'s reading of section 203*( o )* is irrelevant to Plaintiffs' situation and does not help Tyson make its case.

## **CONCLUSION**

To sum up: the Court holds that Plaintiffs' "bookend" theory, which admits to the existence of a "bona fide meal period" but asserts simply that the period is not the length of time Tyson says it is, is a legally cognizable claim under the FLSA. The Court sees no compelling reason why the FLSA enables an employer to take employees off the clock for a meal period while keeping them working as a matter of course and avoid a determination that the time spent working during the "bookends" of that meal period is compensable work that is part of the continuous workday. If Plaintiffs can prove they regularly work before and after their meal periods, the FLSA does not bar their recovery for the time they spend doing that work.

But while Tyson may be liable if Plaintiffs can prove up their claims, Plaintiffs still have to convince a jury of several facts. Tyson, for example, denies that Plaintiffs regularly perform production work during a portion of the unpaid 30-minute meal break each shift. (Docket No. 226-1 at 73). And while Tyson admits that Plaintiffs leave their workstations at the start of the meal break in a staggered fashion (after the last piece of meat passes each employee's position on the line), it denies Plaintiffs' contention that all employees must be on the line at the same time at the end of the meal break; Tyson insists instead that each Plaintiff's 30-minute period begins when that individual leaves the line. (*Id*. at 74 & 86). A jury will have to pin down these

tiny donning/doffing times as compensated work. Doubtless the union required compensation for that concession to the employer. The plaintiffs in this case are trying to upend the deal struck by their own union.").

facts and others to determine if Plaintiffs regularly perform compensable work after Tyson takes them off the clock for a 30-minute unpaid period and before the company turns the clock back on at the end of that time. If a jury finds they do, then it will have to determine the number of minutes those uncompensated activities take at the "bookends" of the 30-minute period.

For the foregoing reasons, the Court will DENY Tyson's motion to reconsider the Court's January 30, 2014 bifurcation order, (Docket No. 284); DENY Tyson's motion for judgment on the pleadings (which the Court treats as a motion for partial summary judgment), (Docket No. 286); and GRANT Plaintiffs' cross-motion for partial summary judgment as to Tyson's liability for work Plaintiffs perform during the "bookends" of the 30-minute unpaid meal periods. (Docket No. 300). An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE