THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HANAA B. ABADEER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 3:09-cv-00125 |
| v. | ) | Judge Sharp |
| | ) | Jury Trial Demanded |
| TYSON FOODS, INC. and TYSON | ) | |
| FRESH MEATS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT AND NOTICE TO THE CLASS**

**I.      Preliminary Statement**

Subject to Court approval, the parties have settled the claims of FLSA opt-in plaintiffs

Hanaa Abadeer, *et al.,* and Rule 23 Class Members (collectively, "plaintiffs") against defendants

Tyson Foods, Inc. and Tyson Fresh Meats, Inc. ("Tyson" or "defendants") for **$7,750,000.00**.

The proposed settlement resolves all claims in the lawsuit alleging that Tyson failed to pay

overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"),

and failed to pay for all hours of work in breach of the plaintiffs' alleged employment contracts

with the defendants in violation of Tennessee law. As explained below, this settlement resolves

all the claims in the lawsuit, or that could have been asserted in the lawsuit on the same facts,

and satisfies all of the criteria for preliminary approval.

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the

Settlement Agreement attached hereto as Exhibit A; (2) approve the Notices of Proposed

Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Settlement Notices")

attached hereto as Exhibit B; (3) appoint Heffler Claims Group, Inc., as the Administrator of the

Settlement; and (4) order the parties to appear before this Court for a Final Approval and Fairness Hearing on a date approximately ninety-one (91) days from the date of the Preliminary Approval Order. In support of this motion, the declaration of plaintiffs' counsel Molly A. Elkin is attached hereto as Exhibit C.

## II.     Case Background and Procedural Posture

This is a hybrid FLSA/Rule 23 state law wage and hour lawsuit involving 6,857 current and former hourly workers employed by Tyson Foods, Inc. at Tyson's Goodlettsville, Tennessee beef and pork case-ready processing plant. Of the 6,857 state law class members,[1] 1,508 have also opted-in to the FLSA collective action.[2] The FLSA collective action includes all current and former hourly employees of defendants who worked at Tyson's Goodlettsville plant from May 4, 2006 who were paid pursuant to Defendants' Alternative Time and Attendance System.  Putative class members had to have opted into the FLSA case on or before April 8, 2014 to be included in the FLSA case.[3] (*See* Order on Certification, DE 120). The Rule 23 state law class is defined as all current and former hourly employees of defendants who worked at Tyson's Goodlettsville plant from April 30, 2003 who were paid pursuant to defendants' Alternative Time and Attendance System. (*See id.*) Only those employees hired on or before February 25, 2014 are in the classes covered by this litigation. This is the last date for which Tyson provided new hire information for purposes of issuing Notice.

---

[1]     Of the 6,857 Rule 23 class members, 547 have no damages because their clams were resolved in the settlement of *Jordan v. IBP*, Case No.:3-02-1132 (M.D. Tenn.) and they ceased employment prior to the effective date of that settlement, they attended orientation but never worked a day on a production floor, and/or were not paid pursuant to the Alternative Time and Attendance System even though they were hourly workers.

[2]     Of the 1,508 individuals who opted into the FLSA collective action, 134 have no damages because their claims are barred by the statute of limitations or they were not in a position covered by the Class definition during the limitations period, or had their claims resolved in the settlement of *Jordan v. IBP*.

[3]     Thirty-eight of the opt in plaintiffs are subject to pending motions to dismiss by Tyson based on Tyson's argument that their consent forms were untimely filed. Without waiving arguments asserted in those motions, Tyson withdraws those motions (DE 381 and 407) and agrees that for settlement purposes, the 38 individuals are covered by the FLSA portion of the settlement agreement

2

On October 3, 2013, the Court issued its decision on the parties' cross-motions for summary judgment on liability. The Court ruled that Tyson willfully violated the FLSA by failing to pay for all hours of work in the continuous compensable work day. (Summary Judgment Decision, DE 261). The Court determined that donning and doffing of the workers' sanitary frocks constituted work, and the measure of the compensable workday should therefore have been from the moment the plaintiffs begin donning their sanitary frocks prior to their shifts until they take them off at the end of their shifts, excluding any *bona fide* meal period. Plaintiffs allege that Tyson's pay policies required its workers to don their frocks prior to clocking in and to take them off and exchange them for clean, sanitary frocks after clocking out, although Tyson contends that not all employees actually do so.[4] The Court awarded double damages and a three year recovery period based on its finding that Tyson's violation of the FLSA was willful and not in good faith. (*Id.*) The Court also ruled that Tyson breached the Rule 23 class members' employment contracts by promising to pay an hourly wage for all hours of work, but then neglected to do so by failing to pay from "frock to frock." (*Id.*).[5]

The Court issued a subsequent summary judgment decision based on further briefing by the parties on the plaintiffs' meal period claim. (Meal Period Summary Judgment Decision, DE 397). The Court ruled that since it had already found that doffing and donning the frock was

---

[4] Tyson changed the location where employees don and doff their frocks in January 2009 by bringing the frocks closer to the time clocks. However, even after that date, Plaintiffs claim Tyson did not pay its workers for all of the alleged pre-shift and mid-shift donning and doffing. Tyson recently notified plaintiffs' counsel that it further changed its practices in May of 2014 by eliminating the Alternative Time and Attendance System and compensating all employees for pre-shift, mid-shift and post-shift donning, doffing and related work activities, See Defendants' Third Supplemental Discovery Response (June 30, 2014), attached hereto as Exhibit D.

[5] Commencing around March 14, 2014, Tyson changed its orientation practices so that it no longer tells new-hires at orientation that they will be paid for all hours worked. In addition, it has entered acknowledgements with active team members disavowing the existence of any contract between Tyson and each of them. *See* Defendants' First Supplemental Response to Plaintiffs' Document Requests and Interrogatory No. 4, dated March 14, 2014 and attached hereto as Exhibit E; Defendants' Second Supplemental Response to Plaintiffs' Document Requests and Interrogatory No. 4, dated April 11, 2014 and attached hereto as Exhibit F and Defendants' Third Supplemental Response to Plaintiffs' Document Requests and Interrogatory No. 4 and Fifth Supplemental Rule 26(A)(1) Initial Disclosures, dated June 30, 2014, attached hereto as Exhibit D.

3

work, the only issues for the jury to decide were (1) whether the plaintiffs engage in production work at the beginning of each unpaid 30 minute unpaid meal period, and (2) how many minutes the class members spend at the beginning and end of each unpaid 30 minute meal period performing production, donning and doffing work. (DE 397, p. 6).

The case was set for trial on April 15, 2014, but was rescheduled for August 12, 2014. (Order to Continue Trial, DE 403). Based on the Court's previous orders, and absent a settlement agreement, if trial were to commence on August 12, the jury would determine in Phase I of the trial the number of unrecorded minutes owed for pre-shift, mid-shift (i.e., meal period) and post-shift work for each of the Production Floors at issue in the case and, as part of that determination, would also decide whether everyone did such activities in such a manner that the issue could be decided class-wide for each department.[6] In Phase II of the trial, the jury would determine the amount of money Tyson owes for the recorded and the unrecorded uncompensated work. (Bifurcation Order, DE 283).

Currently pending before the Court are the following items:

- Defendants' Motion to Decertify the FLSA and Rule 23 Class (DE 324);

- Several motions in limine (DE 301, 314, 325, and 400);

- The parties' objections to deposition designations and counter-designations (DE 305, 310, 329, 330);

- The parties' trial exhibit objections (DE 312, 317);

- Defendants' Motion to Strike 37 FLSA Op-Ins (DE 381);

- Defendants' Motion to Limit the Scope of the Deposition of Jim Wise and the Plaintiffs' Cross-Motion for Protective Order and Sanctions (DE 362, 388);

---

[6]     The production floors for which plaintiffs would have presented evidence of unpaid pre-shift, mid-shift and post-shift work are Ground Beef, Beef Slice, Pork Slice, Pack/Palletizing, Load Out and Concept Room.

- Plaintiffs' Motion for Leave to Reopen Discovery (DE 406); and

- Defendants' Motion to Strike a Late-Filed Consent (DE 407).

## III.    Settlement Negotiations

Settlement negotiations in this matter have been lengthy, principled, and were conducted at arm's length. Settlement discussions between the parties began in January 2014, and continued with numerous counter-offers and discussions occurring over the course of several months. As explained below, an agreement was reached only after the parties enlisted the assistance of a neutral facilitator. (Elkin Decl., ¶ 5).

The parties' negotiations were principled, with each side basing their offers and counter-offers on Tyson's own pay and punch data, the parties' respective assessments of the Court's rulings on numerous issues to date, the expected class member and management testimony regarding the pre-shift, mid-shift, and post-shift work at issue, and the parties' individual assessments of litigation risks.  (Elkin Decl., ¶ 4).

In mid-June, after exchanging numerous offers without reaching an agreement, the parties agreed to a June 30, 2014, facilitation with Bob Boston – an experienced litigator, mediator and partner in the Nashville firm of Waller Lansden – serving as the neutral facilitator. (Elkin Decl., ¶ 5).  Both parties attended with clients authorized to approve a settlement agreement.  Class representatives Marcia Williamson, Welai Smith, Aracelli Villalta, and Linda Ellis participated on behalf of the plaintiffs. Tyson Vice President and Associate General Counsel Paul Kirchner participated on behalf of the defendants. (Elkin Decl., ¶ 6).

After nearly 10 hours of facilitation, the parties adjourned without a settlement agreement, but decided that Mr. Boston would continue to facilitate the settlement discussions. (Elkin Decl., ¶ 6).  After several additional conversations regarding the settlement amount and

non-monetary terms at issue, the parties agreed to settle the claims for $7,750,000.00, and the terms outlined in the attached proposed settlement agreement, during a July 3, 2014, conference call facilitated by Mr. Boston. (Elkin Decl., ¶ 7; *see also* Exhibit A). Before participating in the July 3 call, plaintiffs' counsel obtained the consent and approval of all seven participating Class Representatives named in the Court-approved FLSA and Rule 23 notice, including the four representatives who attended facilitation. [7] (Elkin Decl., ¶ 8). Mr. Kirchner participated in the July 3 conference call and consented on behalf of Tyson. (Elkin Decl., ¶ 8).

## IV.  Summary of the Settlement Terms

### A.  The Settlement Fund

Pursuant to the terms outlined in Exhibit A, the defendants will deposit the Gross Settlement Amount of $7,750,000.00 to fund the Qualified Settlement Fund ("QSF") within 5 business days after the effective date of the settlement agreement.[8] (Ex. A, ¶ 9.3). The Gross Settlement Amount is intended to cover class members' awards under the FLSA and state law breach of contract claims, service payments as described below, attorneys' fees and costs and the Settlement Administrator Fees. (Ex. A, ¶ 9.3). Defendants will also contribute an additional amount sufficient to cover the employer's portion of payroll taxes. (Ex. A, ¶ 9.3).

### B.  Release

The parties agree that:

---

[7]  When this case was initially certified as a Rule 23 class action and §216(b) FLSA action, there were 8 Class Representatives. (DE 121).  However, Class Representative Manuel Hernandez, thereafter, failed to participate or perform his duties as a Class Representative.

[8]  Under the proposed settlement agreement, the effective date of the agreement will be the date after the Court enters the Order granting the parties' Joint Motion for Final Approval of the Settlement Agreement and Agreed Order of Dismissal plus the earlier of two events: either 1) the time for filing an appeal from the Agreed Order of Dismissal has expired without the filing of a notice of appeal; or 2) if a timely appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petition for certiorari), resulting in final judicial approval of the Agreement or withdrawal of such appeal. (Ex. A, ¶ 2.9).

6

Any FLSA Opt In Plaintiff listed in Exhibit 1 to the Settlement Agreement who does not opt-out of the state-law class action case and Settlement Agreement, for themselves and their families, attorneys, heirs, agents, executors, administrators, personal representatives, successors, any future estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasers"), voluntarily and, with the benefit of counsel, fully and forever releases and discharges defendants, their present and former officers, directors, subsidiaries, affiliates, agents, partners, employees, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from any and all FLSA and Tennessee state-law wage-and-hour-related claims – including breach of contract or violation of state laws or regulations for unpaid compensation – and any other wage-and-hour-related claims of any kind related to the claims asserted in this action, whether known or unknown, whether contingent or non-contingent, specifically asserted or not, which the Releasers, or any of them, may assert anywhere in the world against the Releasees, or any of them, arising through the date on which the Agreement is approved by the Court for the time period that Plaintiffs worked and were paid pursuant to the defendants' Alternative Time and Attendance System.

All Rule 23 Class Members who did not opt into the FLSA collective action and who do not opt-out of the state-law class action case and Settlement Agreement, for themselves and their families, attorneys, heirs, agents, executors, administrators, personal representatives, successors, any future estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasers"), voluntarily, and with the benefit of counsel, and fully and forever releases and discharges defendants, their present and former officers, directors, subsidiaries, affiliates, agents, partners, employees, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from any and all Tennessee state-law wage-and-hour-related claims – including breach of contract or violation of state laws or regulations for unpaid compensation – and any other state law wage-and-hour-related claims of any kind related to the claims asserted in this action, whether known or unknown, whether contingent or non-contingent, specifically asserted or not, which the Releasers, or any of them, may assert anywhere in the world against the Releasees, or any of them, arising through the date on which the Agreement is approved by the Court for the time period that Plaintiffs worked and were paid pursuant to the defendants' Alternative Time and Attendance System.

(Ex. A, ¶ 15.1 and 15.2). Further, the parties agreed that "This release does not extend to any

claims for workers' compensation, claims brought under Title VII of the Civil Rights Act of 1964,

or other statutory or common law claims unrelated to the claims asserted in the *Abadeer* action."
(Ex. A, ¶ 15.3).

### C.  Eligible Employees

All FLSA opt-in plaintiffs and Rule 23 class members are eligible to participate in the settlement. The FLSA opt-in plaintiffs are the 1,508 current and former hourly employees of defendants who worked at Tyson's Goodlettsville plant during the time period from May 4, 2006, through May 25, 2014,[9] who were paid pursuant to defendants' Alternative Time and Attendance System and who opted-in to the case on or before April 8, 2014. (Ex. A, ¶ 1.1). The Rule 23 state law class includes the 6,857 current and former hourly employees of defendants who worked at Tyson's Goodlettsville plant from April 30, 2003 through May 25, 2014 and who were hired on or before February 25, 2014, who were paid pursuant to defendants' Alternative Time and Attendance system. (Ex. A, ¶ 1.2).

### D.  Distribution Formula

As discussed *infra* at Parts IV.E. and IV.F, the parties have agreed that plaintiffs will seek to have $2,583,333.33 of the Qualified Settlement Fund ("QSF") allocated as plaintiffs' attorneys' fees and $226,403.71 as plaintiffs' costs and expenses. The $2,583,333.33 equals 33-1/3% of the gross settlement amount. The FLSA Class Representatives agreed to pay this amount in fees when they retained Woodley & McGillivary to represent them and the opt-in plaintiffs agreed to be bound by the agreements entered into by the Class Representatives. Elkin Decl. ¶ 14. The Class Representatives agreed to this fee and these expenses during settlement and defendants do not object to these amounts. *Id.*

---

[9] *See supra* note 4. On May 25, 2014, Defendants also installed new time clocks. Workers now clock in before they don frocks and also clock out and in for the meal period. Defendants contend that their employees are paid for all hours on the clock.

In addition, plaintiffs seek final approval of $98,000 in Service Payments to Class Representatives, deposed plaintiffs, and trial plaintiffs. (Ex. A, ¶ 10.5). After these amounts, plus settlement administration costs which are estimated to be $145,000.00, the remaining funds (the "Net Settlement Fund") will be allocated among the FLSA plaintiffs and Rule 23 class members. (Ex. A, ¶ 10.7). Tyson will be solely responsible for paying defendants' share of payroll taxes. This amount will not come out of the Gross Settlement Amount. (*Id.* at ¶ 9.3).

Taking into consideration risk of decertification, litigation risk at trial and on appeal, the contested nature of plaintiffs' state law and meal period claims, the Court's order excluding plaintiffs from presenting evidence of state law damages for hours of work in excess of 40 hours in a workweek, the uncertainty regarding the rate of pre-judgment interest on the state law claim, and, conversely, the settled nature in this case of the FLSA pre-shift and post-shift claims, the award of liquidated damages and a three year recovery period on the FLSA claims, as well as the tolling awards on the FLSA claims, plaintiffs have determined to allocate $3,495,695.23 of the Net Settlement Fund to the FLSA claim and $1,201,567.73 of the Net Settlement Fund to the state law claim.[10] (Ex. A, ¶ 10.7; Elkin Decl., ¶ 12). The Class Representatives approved this distribution formula and defendants do not object to it. (Elkin Decl., ¶ 13).

FLSA Opt-in plaintiffs' awards will be distributed based on each plaintiff's total number of weeks[11] that he/she was paid pursuant to defendants' Alternative Time and Attendance System for the time period extending back three years from their court-file date (plus any Court ordered

---

[10]     The Court's Order excluding plaintiffs from presenting evidence of state law damages for unpaid hours of work in excess of 40 hours in a workweek (DE 373, ¶ 8) resulted in a reduction of the majority of plaintiffs' possible recovery on the state law claim. (Elkin Decl., ¶ 10).

[11]     For purposes of the distribution formulas for both FLSA opt-ins and Rule 23 class members any employee that was employed by Tyson on April 1, 2014  (the last time pay data was provided) is credited with remaining employed through May 25, 2014, the date that Tyson changed its pay practices and the end of the recovery period. This is potentially more generous to the active Rule 23 class members than they may have been able to recover in litigation given that Tyson took action starting in March 2014 to avoid creating new contracts and novate what the Court ruled to be existing contracts.  See supra note 5.

9

tolling) and continuing until May 25, 2014.[12] (Ex. A, ¶ 10.8). Fifty percent (50%) of each FLSA Opt-in Plaintiff's FLSA award will constitute backpay; fifty percent (50%) of each FLSA Opt-in Plaintiff's FLSA award with constitute liquidated damages. (*Id.*).

The Rule 23 Class Members' awards will be distributed based on each Class Member's total number of weeks that he/she was paid pursuant to Defendants' Alternative Time and Attendance System from April 30, 2003 until May 25, 2014. (Ex. A, ¶ 10.9). Ninety percent (90%) of the Rule 23 Class allocation ($1,081,410.96) will constitute backpay and the remaining ten percent (10%) will constitute pre-judgment interest ($120,156.77) with a simple interest formula being applied to the backpay amount using the midpoint of the Rule 23 Class Member's recovery period. (Ex. A, ¶ 10.9).

### E. Service Payments

As one court explained in awarding service payments to plaintiffs involved in filing and litigating a similar claim, "in a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014). In light of this view by the Plaintiffs and the acknowledged time commitment involved,[13] the parties agreed to allot a portion of the Gross Settlement Amount as service payments to the plaintiffs who participated in the lengthy and complex litigation of this lawsuit on behalf of the members of the FLSA collective action and/or

---

[12] Pursuant to recent discovery served by Tyson, Tyson asserts that it began paying all Team Members from punch in to punch out on May 25, 2014, and the Alternative Time and Attendance system has been replaced with a new timekeeping system. *See* Exhibit D (Defendant's Third Supplemental Discovery Response). Class Representatives who are still employed at Goodlettsville are aware of this new system and, indeed, they are the ones who brought it to the attention of Plaintiffs' counsel. See dkt. no. 407 at p.1.

[13] Tyson denies that the Class Representatives were at any risk, but acknowledges that some employees may have believed such risk existed anyway. In any event, Tyson acknowledges the time commitment by persons who will receive service awards under the Settlement Agreement.

Rule 23 class. (Ex. A. at ¶10.5). Plaintiffs have decided to allocate $98,000.00 of the gross settlement amount as follows among the plaintiffs participating in the litigation of this lawsuit in the following manner: $10,000.00 will be awarded to each of the seven participating Class Representatives (totaling $70,000.00); $500 will be awarded to each of the 16 plaintiffs who were deposed by the defendants (totaling $8,000.00); $1,000 will be awarded to each of the 20 plaintiffs who agreed to testify at trial and who participated in extensive trial preparation sessions with counsel (totaling $20,000.00). (*Id.*)

### F. Attorneys' Fees and Costs

Consistent with the Settlement Agreement, plaintiffs' counsel seek approval of attorneys' fees in the amount of $2,583,333.33, which is equal to one-third (33.33%) of the Gross Settlement Amount, to compensate them for attorneys' fees. (Ex. A, ¶ 8.3). Courts considering attorneys' fees awards as part of a Rule 23/FLSA class settlement "have routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases." *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014). The Court need not rule on fees and costs now, however. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), plaintiffs' counsel will file a motion for approval of attorneys' fees and reimbursement of expenses as part of its motion for final approval of the settlement agreement.

### G. Settlement Claims Administrator

Under the Settlement Agreement, and with the consent of the defendants, plaintiffs' counsel will retain the services of Heffler Claims Group, Inc., to act as Settlement Administrator. (Ex. A. ¶ 3.1). The Settlement Administrator will be responsible for the mailing of Notices to Class Members in accordance with this Court's Order, administering claims forms, administering W-4 Forms to plaintiffs no longer employed by Tyson, managing the Qualified Settlement Fund,

distributing tax forms, and distributing settlement checks to state law class members and FLSA opt-ins. (*Id.* at Sections 5-7, 9-12). The Settlement Administrator's fees will be paid from the QSF and will not exceed $145,000.00 (*Id.* at ¶¶ 3.1, 9.3).

### H. Settlement Claims Procedure

The well-defined class action settlement procedure includes 3 distinct steps:

> 1. Preliminary approval of the proposed settlement after submission to the Court of this joint motion for preliminary approval;

> 2. Dissemination of mailed notices of settlement to all affected class members; and

> 3. A final settlement approval hearing at which time class members may be heard regarding the settlement, and at which time argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, et seq. (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

With this motion, the parties request that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving plaintiffs' Proposed Notices, and authorizing them to send notices of the settlement to the class. One notice will be sent to Rule 23 Class members who did not opt-in to the FLSA case and the other notice will be sent to the 1,508 Rule 23 members who opted in to the FLSA portion of the case. (Ex. B). The notices allow the class members to review the number of weeks that have been allocated to them.  It also explains how the gross settlement amount will be allocated, sets forth the amount of fees and expenses and service payments that will be paid out of the QSF, notifies the class of the fairness hearing and the opportunity to opt-out and/or object to the Rule 23 class settlement, and allows the FLSA Opt-in plaintiffs who are former employees of Tyson to submit a W-4 form for purposes of being

paid their share once the QSF is funded.[14]  Notably, the notices will be mailed in three languages (English, Spanish and Arabic) and the QSF will set up a call center to field questions from class members.

Following final approval of the settlement agreement, the QSF Administrator will mail all Rule 23 class members a claim form to complete and return to the Settlement Administrator claiming his/her share of the Net Settlement Fund allocated to the state law claim.  Rule 23 class members will be given a reasonable amount of time, up to 60 days, to complete a claim form. Any unclaimed monies resulting from class members' failure to timely submit a claim form will be reallocated and distributed to those Rule 23 class members who timely filed claims.

Following final approval of the settlement agreement, and within 15 business days after the date that the defendants fund the QSF, the QSF Administrator will mail checks to all FLSA Opt-in Plaintiffs entitled to payment of the FLSA Net Settlement Fund representing their share of the FLSA Net Settlement Fund. Any monies from uncashed FLSA checks, after 90 days from mailing the checks, will be redistributed to the FLSA plaintiffs who cashed their checks after any unanticipated expenses are reimbursed to the QSF Settlement Administrator and to plaintiffs' counsel for unreimbursed costs associated with claims administration (subject to a motion and court approval).

None of the $7,750,000 will revert to defendants.

V.    **Legal Argument**

---

[14]    Upon final approval of the settlement following the fairness hearing, the Settlement Administrator will send claim forms to all Rule 23 Class members.  Included with the claim form will be a W-4 for Rule 23 class members who did not opt-into the FLSA portion of the case.

## A.     Legal Standards for Settlement Approval

The law and federal policy strongly favor the settlement of class action litigation. *UAW v. General Motors Corp*., 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp*., 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); *Steiner v. Fruehauf Corp*., 121 F.R.D. 304, 305 (E.D. Mich. 1988) *aff'd sub nom Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("case law favors the voluntary settlement of class actions"). *See, e.g., Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am*., 803 F.2d 878, 880 (6th Cir. 1986).

Court approval is required to settle both an FLSA collective action and a Rule 23 class action. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); Fed. R. Civ. P. 23(e). "Before approving a settlement, a district court must conclude that it is fair, reasonable and adequate." *Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007); *see also* Fed. R. Civ. P. 23(e)(2); *UAW*, 497 F.3d at 631 ("Before approving a [ Rule 23] settlement, the district court must conclude that it is 'fair, reasonable, and adequate.'").

## B.     The FLSA Settlement is Fair, Reasonable, and Adequate

"The standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement." *Flores v. One Hanover, LLC*, 2014 U.S. Dist. LEXIS 78269 (S.D.N.Y. June 9, 2014). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "approve FLSA settlements when they

are reached as a result of contested litigation to resolve bona fide disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. U.S*., 679 F.2d 1350, 1353-54, 1353 n.8 (11th Cir. 1982)).

As discussed in Part V.C, *infra*, the instant settlement was the result of contested litigation and arm's length negotiation. The parties were represented by counsel experienced in wage and hour law, conducted years of discovery, engaged in strenuous litigation, exchanged extensive damages calculations, and participated in months of vigorous negotiations in an effort to reach the settlement. Therefore, preliminary FLSA approval is warranted.

### C.     The Rule 23 Settlement is Fair, Reasonable, and Adequate

"Given that class settlements are favored, the role of the district court is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned.'" *IUE-CWA*, 238 F.R.D. at 594 (citations omitted); *Clark Equip. Co*., 803 F.2d at 880 (same).

The district court is to assess the settlement with regard to a "range of reasonableness," which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion." *IUE-CWA*, 238 F.R.D. at 594 (citations omitted). The district court is to consider "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig., ("Cardizem")*, 218 F.R.D. 508, 522 (E.D. Mich., 2003). In assessing a proposed settlement, the district court judge "may not 'substitute his or her judgment for that of the litigants and their counsel'" and "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA*, 238 F.R.D. at 593, 594 (citations omitted).

The Sixth Circuit has identified seven factors that guide the inquiry undertaken by the district court in assessing whether a proposed settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion [i.e. whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining]; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Moulton v. United States Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *UAW*, 497 F.3d at 631 (*citing Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983)); *IUE-CWA*, 238 F.R.D. at 594 (also including as a factor "whether the settlement is fair to the unnamed class members"); *Cardizem*, 218 F.R.D. at 522. The district court is to address "whether the interests for the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Cardizem*, 218 F.R.D. at 522 (citation omitted). In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595.

### 1. The Settlement is the Product of Arm's Length Negotiations (Factor 1)

Settlement negotiations in this matter have been lengthy, principled, and were conducted at arm's length. Settlement discussions between the parties began in January 2014, and continued with numerous counter-offers and protracted settlement discussions occurring over the course of several months. As explained both in Section III above and as discussed below, an agreement was reached only after the parties enlisted the assistance of a neutral facilitator. (Elkin Decl., ¶ 5).

The parties' negotiations were principled, with each side basing their offers and counter-offers on Tyson's own pay and punch data, the parties' respective assessments of the Court's

rulings on numerous issues to date, the expected class member and management testimony regarding the pre-shift, mid-shift, and post-shift work at issue, and the parties' individual assessment of litigation risks. (Elkin Decl., ¶ 4).

In mid-June, after exchanging numerous offers, the parties agreed to a June 30, 2014, facilitation with Bob Boston – an experienced litigator, mediator and partner in the Nashville firm of Waller Lansden – serving as the neutral facilitator. (Elkin Decl., ¶ 5). Both parties attended with clients authorized to approve a settlement agreement, with class representatives Marcia Williamson, Welai Smith, Aracelli Villalta, and Linda Ellis participating on behalf of the plaintiffs and Tyson Vice President and Associate General Counsel Paul Kirchner participating on behalf of the defendants. (Elkin Decl., ¶ 6).

After nearly 10 hours of facilitation, the parties adjourned without a settlement agreement, but decided that Mr. Boston would continue to facilitate the settlement discussions. (Elkin Decl., ¶ 6). After several additional conversations regarding the settlement amount and the terms at issue, the parties agreed to settle the claims for $7,750,000.00, and the principal terms outlined in the attached proposed settlement agreement, during a July 3, 2014, conference call facilitated by Mr. Boston. (Elkin Decl., ¶ 7; *see also* Exhibit A). Before participating in the July 3 call, plaintiffs' counsel obtained the consent and approval of all seven participating class representatives named in the Court-approved FLSA and Rule 23 notice, including the four who attended facilitation. Mr. Kirchner participated in the July 3 conference call and consented on behalf of Tyson. (Elkin Decl., ¶ 8).

Accordingly, the principled, arm's-length negotiations support preliminary approval of the settlement.

17

## 2. While Plaintiffs' Believe Their Position is Strong, Continued Litigation Through Trial and Appeal Would be Complex, Costly, and Long (Factors 2 and 4)

While plaintiffs believe their legal position is strong, "[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010); *See also In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court.... The prospect of such a massive undertaking clearly counsels in favor of settlement.") (internal quotation marks and citations omitted).

Here, while the plaintiffs have ultimately succeeded through summary judgment on many of the merits issues involved in the action, there is no doubt that the trial would be long, arduous and complex. Moreover, the defendants have stated in no uncertain terms that they intend to appeal to the Sixth Circuit the Court's decisions, particularly, the Court's meal period decision and the decision finding that Tyson breached their supposed employment contracts with the plaintiffs. While plaintiffs' position is that the Court's decisions are well reasoned, the defendants are correct in their view that the Sixth Circuit has not yet considered these precise issues, and thus plaintiffs face risk on appeal. Moreover, even if the plaintiffs are successful on appeal, this will result in substantial litigation costs and delay to the class members in receiving their share of the damages award.

Finally, the Court is still considering the defendants' motion to decertify the class and collective action. If defendants are ultimately successful in decertifying the case, the plaintiffs would be forced to litigate their FLSA and/or state law claims in individual actions, a result that would be time-consuming, expensive, and require individualized inquiries and the participation

18

of all individual plaintiffs. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.

Further, the plaintiffs considered that the Defendants recently installed new time clocks and now capture time prior to all class members donning the frocks. It has also started requiring workers to doff and don and perform production work *outside* of the full 30 minute unpaid meal period as opposed to during the beginning and end of the 30 minute unpaid meal period. In other words, beginning on May 25, 2014, plaintiffs have clocked out for a full thirty minutes for lunch and have performed all production, doffing and donning mid-shift activities while on the clock and in a paid status. Tyson claims it now pays all workers punch to punch and only deducts the actual time off the clock during the meal period for each worker, facts which have been witnessed by at least some of the class members including Class Representative Marcia Williamson (see docket no. 407 at p.1). Thus, plaintiffs believe that they were successful in effecting changes to the time capture and pay policies at issue in this litigation (although Tyson unequivocally denies that the plaintiffs are responsible for the unilateral changes to its system and declined to make such an acknowledgement a condition of the Settlement Agreement). Plaintiffs also considered the risk that in light of these changes the jury may award a lesser amount in damages if the jury felt that Tyson "fixed" the problem.

In light of the above considerations, these factors weigh in favor of preliminary approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 3)

The parties have engaged in extensive discovery, with the parties exchanging and analyzing approximately 190,000 pages of documents and massive amounts of electronic payroll and clock-in data. The defendants deposed 16 plaintiffs, and the plaintiffs took eight Rule 30(b)(6) depositions, in addition to the discovery conducted in the previous *IBP v. Jordan*

litigation, which the parties agreed was relevant to this matter. Indeed, as of April 14, 2014, the case was just hours from being heard by a jury with all exhibit lists, witness lists, deposition designations, jury instructions, jury verdict forms and the like already submitted to the Court. Since that time, Tyson also served additional supplemental discovery. Thus, discovery has advanced far enough to allow the parties to resolve this dispute responsibly, and thus this factor supports preliminary approval.

### 4. Class Counsel and the Class Representatives Believe Settlement is In the Best Interest of the Class (Factor 5)

The judgment of Class Counsel that the settlement is in the best interest of the Class "is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA*, 238 F.R.D. at 597. *See also Cardizem*, 218 F.R.D. at 525 ("in approving a proposed settlement, the court also considers the opinion of experienced counsel as to the merits of the settlement."). Here, class counsel has weighed the respective risks to proceeding with litigation, and has extensively analyzed the defendants' potential liability based on thorough damages calculations prepared by Woodley & McGillivary Litigation Director Keith Nickerson using the defendants' Pay and Punch Data. (Elkin Decl., ¶ 10). Further, class counsel met with and discussed these risks and the defendants' potential liability, with the Class Representatives and asked the representatives to consider whether settlement was in the best interest of the class. (Elkin Decl., ¶ 11). Each class representative was specifically asked to consider that the continued litigation could result in the class receiving a greater monetary judgment or lesser monetary judgment after trial and appeal, and each class representative determined that certainty of settlement outweighs the risks and costs of going forward. (*Id.*). Four of the seven class representatives participated in the June 30, 2014 facilitation; all seven support the settlement agreement. (*Id.* at 6, 11).

In light of this analysis, class counsel and the class representatives believe that settlement is in the best interest of the class.

### 5. The Reaction of Absent Class Members Weighs in Favor of Preliminary Approval (Factor 6)

Notice of the settlement has not yet been issued to the class, and an assessment of the Class's reaction is premature. Notably, however, the seven class representatives – four of whom participated in the June 30, 2014 facilitation and all of whom have been actively involved in the litigation of these claims since the case was originally filed in 2009 – fully support the settlement agreement. (Elkin Decl., ¶ 13). While the Court will more fully analyze this factor after notice issues and class members are given the opportunity to opt-out or object, it weighs in favor of preliminary approval.

### 6. The Public Interest Weighs in Favor of Preliminary Approval (Factor 7)

The resolution of this litigation will, among other things, (i) provide backpay, liquidated damages (in the case of FLSA opt-ins), and interest to all participating class members, (ii) ensure certainty for all concerned without more delay, and (iii) obviate the need for years of litigation, all of which are consistent with the public interest. Further, plaintiffs contend that the litigation has resulted in significant changes to Tyson's pay practices and clock-in procedures which may bring the defendants into compliance with the FLSA as defendants contend they now compensate Goodlettsville Team Members for all pre-shift, mid-shift, and post-shift donning and doffing at issue in this case. (*See* Exhibit D). (Tyson unequivocally denies that its unilateral changes to its pay practices, made *after* the originally scheduled trial date, are due to the actions of the Plaintiffs in this case, and Tyson refused to acknowledge such as part of the Settlement Agreement.) Thus, while both sides agree that this litigation resulted in benefits to class members for past workplace activities, Plaintiffs also contend that the litigation benefited future

employees working at Tyson's Goodlettsville facility. Accordingly, this agreement simultaneously benefits the parties and serves the public interest by ensuring compensation to the class members for previously unpaid work, providing the benefit of FLSA compliance for current and future workers at the Goodlettsville facility, and resolving this federal court dispute with the maximum possible expediency and efficiency. *See Cardizem*, 218 F.R.D. at 520 ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources").

### D. The Notices are the Best Notice Practicable and Approval is Warranted

Before conducting a final fairness hearing, the district court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1). The notice should be "reasonably calculated, under all the circumstances, to apprise [the Class Members] of the pendency of the action and afford them an opportunity to present their objections." *UAW*, 497 F.3d at 631 (citing, *inter alia, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the attached notices, one for Rule 23-only class members and the other for FLSA/Rule 23 class members, is the best practicable notice as these notices are reasonably calculated to apprise the class members of the pending settlement and afford them an opportunity to present their objections. The notices also allow the class members to review the number of weeks that have been allocated to them; explain how the gross settlement amount will be allocated; set forth the amount of fees and expenses and service payments that will be paid out of the QSF; notify the class of the fairness hearing and the opportunity to opt-out of the Rule 23 class settlement; and allow the FLSA plaintiffs who are former employees of Tyson to submit a

W-4 form for purposes of being paid their share once the QSF is funded.   The Rule 23 class members will be sent W-4 forms with claim forms upon final approval of the settlement. Accordingly, approval of the notices is warranted.

**V.      Conclusion**

For the reasons set forth above, the parties respectfully request that the Court enter an order:

1.      Preliminarily approving the settlement reached by the parties in this action as embodied in their Settlement Agreement (Exhibit A);

2.      Approving the Proposed Class Settlement Notices attached hereto as Exhibit B;

3.      Appointing Heffler Claims Group, Inc., as the Administrator of the Settlement;

4.      Instructing the parties to appear before this Court for a Final Approval and Fairness Hearing on a date approximately ninety-one (91) days from the date of entry of this Preliminary Approval Order; and

5.      For such other and further relief as the Court may deem just and proper.

Dated: July 17, 2014                                    Respectfully submitted,


/s/ Molly A. Elkin_____                       /s/ Kenneth A. Weber_____
Molly A. Elkin                                          Kenneth A. Weber
Sara L. Faulman                                         Baker, Donelson, Bearman & Caldwell
Diana J. Nobile                                         Commerce Center
WOODLEY & McGILLIVARY                                   Suite 800, 211 Commerce Street
1101 Vermont Ave, N.W. Suite 1000                       Nashville, TN 37201
Washington, DC 20005                                    (615) 726-5600 (telephone)
 (202) 833-8855                                         (615) 726-0464 (facsimile)
 (202) 452-1090 (Facsimile)


/s/ Charles P. Yezbak, III_____                     /s/ Michael J. Mueller_____
Charles P. Yezbak, III                                  Michael J. Mueller
Yezbak Law Office                                       Emily Burkhardt Vicente
2002 Richard Jones Road, Suite B-200                    Evangeline C. Paschal
Nashville, TN 37215                                     Hunton & Williams LLP
 (615) 250-2000                                         2200 Pennsylvania Avenue, NW
                                                        Washington, DC 20037
*Attorneys for Plaintiffs*                              (202) 419-2116 (telephone)
                                                         (202) 778-7433 (facsimile)

                                                        *Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

        The undersigned attorney certifies that a copy of the foregoing Memorandum in Support
of the Motion for Preliminary Approval of the Settlement Agreement and Exhibits were served
on the following individuals on July 17, 2014 by filing the document on the Court's ECF system:

Kenneth A. Weber
Baker, Donelson, Bearman & Caldwell
Commerce Center
Suite 800, 211 Commerce Street
Nashville, TN 37201

Michael J. Mueller
Emily Burkhardt Vicente
Evangeline C. Paschal
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*/s/ Molly A. Elkin*
Molly A. Elkin

24